STATE of Wisconsin, Plaintiff-Appellant,

v.

Glenn E. DAVIS, Defendant-Respondent.†

Court of Appeals

*No. 00–2916–CR. Submitted on briefs August 3, 2001.—Decided August 29, 2001.*

2001 WI App 210

(Also reported in 634 N.W.2d 922.)

† Petition to review granted 11-27-01.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Marguerite M. Moeller*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James M. Shellow* and *Catherine E. Levinson* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J. In this appeal we consider whether a defendant who intends to present expert testimony pursuant to *State v. Richard A.P.*, 223 Wis. 2d 777, 589 N.W.2d 674 (Ct. App. 1998), can be compelled to submit to a psychological examination by a state-selected expert without violating his or her constitutional right against self-incrimination. In *Richard A.P.*, this court held that a defendant may present expert psychological testimony as to his or her character for sexual deviance in order to show the defendant lacks the psychological profile of a sex offender and is therefore unlikely to have committed the crime. *Id.* at 795. We determine that a defendant who presents such expert testimony puts his or her mental status in issue and thereby waives the right against self-incrimination. Because fundamental fairness in the criminal process dictates that the State have access to the same quality of psychiatric evidence, *see State v. Maday*, 179 Wis. 2d 346, 357, 507 N.W.2d 365 (Ct. App. 1993), we conclude that a defendant who manifests the intent to introduce *Richard A.P.* testimony may be ordered to submit to a psychiatric evaluation by an expert chosen by the State. Of course, the State's use of its psychiatric testimony is for the sole purpose of rebutting the defendant's presentation of psychiatric character evidence. Therefore, we reverse the order of the trial court denying the State's motion to compel Glenn E. Davis to submit to a

reciprocal psychological examination and remand to the trial court to conduct further proceedings consistent with this opinion.'

¶ 2. Davis is charged with repeated sexual assault of a child, contrary to Wis. Stat. § 948.025 (1999–2000),[1] and second-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(2). Following a preliminary hearing and the filing of the information, Davis entered not guilty pleas. His counsel filed a Notice of Expert Witness citing to *Richard A.P.*, and stating the intent to call Dr. Bronson Levin to testify that Davis "does not exhibit character traits consistent with a sexual disorder, such as pedophilia, that the likelihood that someone without a sexual disorder would assault a child and the data upon which this opinion is based." The State responded with a motion to compel Davis to submit to a psychological examination by a state-selected expert. The State argued that if the trial court permitted Davis to present Levin's opinions pursuant to *Richard A.P.*, then the State should be entitled to a reciprocal examination pursuant to *Maday*.

¶ 3. The trial court denied the State's motion on the basis that compelling Davis to submit to a psychological exam by the State's expert would violate his right against self-incrimination. The trial court specifically stated it was not yet ruling that the defense expert would be allowed to testify and reserved for future consideration the question regarding qualification of the expert and the scientific basis of his opinion. The court thus confined its ruling to deciding that Davis could not be compelled to submit to a reciprocal psychological examination by an expert chosen by the

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

State. We subsequently granted the State's petition for leave to appeal the trial court's nonfinal order.

¶ 4. Whether particular conduct by a criminal defendant constitutes a waiver of his or her right against self-incrimination is an issue subject to this court's independent review. *See Neely v. State*, 97 Wis. 2d 38, 43, 292 N.W.2d 859 (1980) (waiver of privilege is a constitutional issue). Furthermore, the issue of whether a compulsory psychological examination is constitutionally permissible presents a question of law subject to de novo review. *See Maday*, 179 Wis. 2d at 353.

¶ 5. We begin our discussion with *Richard A.P.* In that case, like this one, the defendant sought the admission of expert testimony to demonstrate that he did not exhibit character traits consistent with a sexual disorder such as pedophilia. We wrote in the opinion that Richard's expert was prepared to testify that absent a diagnosable sexual disorder, it is unlikely that a person would molest a child. *Richard A.P.*, 223 Wis. 2d at 791.[2] We concluded that such evidence was relevant

[2] The State posits that *State v. Richard A.P.*, 223 Wis. 2d 777, 589 N.W.2d 674 (Ct. App. 1998), is erroneous because it is based on the court's misapprehension regarding the content of the expected expert testimony. It points to a later, out-of-court statement by Richard's expert in which he asserted that drawing a causal connection between a defendant's guilt or innocence and a sexual disorder is contrary to his expert opinion. This later statement was not part of our record. We confined ourselves to the assertions in the offer of proof. Therefore, this statement is irrelevant to the validity of our holding in *Richard A.P.* We further note that had the expert been allowed to testify, any discrepancy in his opinion regarding sexual deviance and the predisposition to molest a child would have been developed

and admissible under discovery rules pertaining to expert testimony in tandem with the rules governing character evidence. *Id.* at 795.

¶ 6. We also observed in a footnote that the presentation of character evidence by the defendant comes with a risk that the State will introduce countervailing character evidence by way of rebuttal. *Id.* at 795 n.9. The case before us now requires an exploration of that risk referred to in *Richard A.P.* The State argues that a defendant who chooses to present *Richard A.P.* testimony puts his or her mental status in issue and thereby waives his or her right against self-incrimination. According to the State, the defendant must submit to a psychological examination by a state-selected expert or else forego the presentation of the *Richard A.P.* testimony.

¶ 7. The State concedes there is no case directly on point for the proposition it is advancing, but finds analogous support in sentencing and penalty phase cases, *see Savino v. Commonwealth,* 391 S.E.2d 276, 280–81 (Va. 1990), insanity defense cases, *see State v. Hutchinson,* 766 P.2d 447, 452 (Wash. 1989), and battered woman's syndrome cases, *see State v. Briand,* 547 A.2d 235, 238–39 (N.H. 1988). The premise of these cases is that the defendant injected the issue of his or her mental status into the trial, thereby waiving the Fifth Amendment privilege. In *Briand,* for example, the New Hampshire Supreme Court held that a defendant relying on expert testimony that she suffered from

during the trial. Indeed, this aspect of the expert's testimony would have been ripe for rebuttal, but it does nothing to undermine the reasoning of our decision in *Richard A.P.* Moreover, the supreme court denied the State's petition for review of that case and, contrary to the view of the State, it remains good law.

battered-spouse syndrome as an affirmative defense may be compelled to submit to an evaluation by a state expert without violating the Fifth Amendment. The court reasoned that the defendant waived the privilege by her "anticipated reliance on expert evidence as a mechanism for introducing her own account of the facts." *Id.* at 238. We find the following language of the New Hampshire Supreme Court instructive:

> Because the expert's testimony is . . . predicated on the defendant's statements, the latter are explicitly or implicitly placed in evidence through the testimony of the expert during his direct and cross-examination. Since a defendant would waive his privilege against compelled self-incrimination if he took the stand and made those same statements himself, his decision to introduce his account of relevant facts indirectly through an expert witness should likewise be treated as a waiver obligating him to provide the same access to the State's expert that he has given to his own, and opening the door to the introduction of resulting State's evidence, as the State requests here, to the extent that he introduces comparable evidence on his own behalf. Just as the State may not use a compelled psychological examination to circumvent the privilege against self-incrimination, neither may a defendant voluntarily employ a psychological witness wholly to negate the waiver that his direct introduction of personal testimony would otherwise effect.

*Id.* at 239 (citation omitted). Clearly, the rationale for finding waiver in *Briand* was that expert witnesses should not be allowed to serve as a substitute for the defendant's version of how the crime occurred.

¶ 8. Davis claims that *Briand* and the other cases the State relies upon are legally distinguishable because in each of them, the defendant was not claiming that he or she had not committed the act underlying the

charged crime. Instead, as the State concedes, the contested issue was limited to such questions as legal responsibility for the crime (*Hutchinson*), whether the death penalty should be imposed (*Savino*), or the defendant's mental state at the time of the crime (*Briand*). In this case, however, Davis is denying that he committed the charged crime. He intends to offer the expert testimony regarding his character for sexual deviance as circumstantial evidence of his innocence.

■

¶ 9. Regardless of how Davis characterizes his offer of proof, the fact remains that there is more than actus reus at issue here. He has indicated his intent to put character in issue. His expert's opinion presumably will be based upon one or more interviews with Davis and other standardized testing procedures. To the extent that the expert's opinion rests on Davis's statements, we agree with the State that the rationale of *Briand* and similar cases is equally applicable here. A defendant who intends to present *Richard A.P.* evidence through an expert is using that expert as a conduit for presenting the defendant's statements about his or her sexual history, sexual preferences and sexual attitudes. Were the defendant to take the stand and testify about these subjects, he or she would be deemed to have waived his or her privilege and would be required to submit to cross-examination. The defendant cannot be permitted to avoid this result by using an expert as a surrogate.

¶ 10. Davis further counters that in *Briand* and other cases cited by the State, where the defendant was deemed to waive his or her right against self-incrimination, the defendant did so by offering expert testimony in support of an affirmative defense on which the defendant had the burden of proof. Davis, on the

other hand, is offering expert testimony to rebut the prosecution's claim that he committed the crime. Offering evidence on a matter for which he does not carry the burden of proof, he posits, should not constitute a waiver of the privilege. Davis cites to several cases that support this distinction.[3]

---

[3] For example, in *State v. Fair*, 496 A.2d 461 (Conn. 1985), the defendant raised the affirmative defense of extreme emotional disturbance to a charge of murder. *Id.* at 463. The defendant challenged a compelled psychiatric examination. The court noted that a defendant, "by merely contesting the intent element of a charged crime, does not ordinarily put his mental status in issue and may not be subjected to a court-ordered psychiatric evaluation." *Id.* at 464 n.3. In the instant case, however, the court stated the defendant had put his mental status at issue by asserting the defense of extreme emotional disturbance and therefore relinquished his privilege against submitting to a court-ordered examination.

Similarly, in *United States v. Davis*, 93 F.3d 1286 (6th Cir. 1996), the Sixth Circuit Court of Appeals observed a distinction between a defendant's introduction of psychiatric evidence to satisfy an affirmative defense and the introduction of such evidence to negate an element of the crime on which the State bears the burden of proof:

> The defendant who claims insanity interjects a new issue into the proceedings on which he or she bears the burden of proof. The privilege is not violated by an examination, because the examination does not concern an element of the crime. . . . When the defendant claims "diminished capacity," however, he or she seeks to undercut the government's proof of an element of the offense. Therefore, any compelled examination will necessarily involve self-incrimination.

*Id.* at 1295 n.8 (citations omitted). Other federal courts have rejected the affirmative defense/burden of proof distinction in determining the status of the defendant's Fifth Amendment privilege. *See, e.g., United States v. White*, 21 F. Supp.2d 1197,

¶ 11. We are convinced that Davis's affirmative defense/burden of proof approach elevates form over substance. *See United States v. Halbert*, 712 F.2d 388, 390 (9th Cir. 1983). While Davis is not technically asserting an affirmataive defense, he is certainly offering a theory of defense. We see no reason to distinguish the ability of the State to compel psychiatric testimony in response to an affirmative defense from the use of such testimony to rebut the defendant's theory of defense based on expert character evidence. Both instances place the defendant's mental status in issue and "hinge on the workings of a defendant's mind at the time of the offense." *United States v. White*, 21 F. Supp. 2d 1197, 1200 (E.D. Cal. 1998). Neither Davis's rights under the Fifth Amendment to the United States Constitution nor his rights under article I, section 8 of our state constitution are violated by a court-ordered interview, provided that the psychiatrist's testimony is limited to use in rebuttal.

¶ 12. Our decision regarding the availability of a court-ordered examination of a defendant who seeks to introduce expert testimony as character evidence is consistent with the approach taken by other courts

1200 (E.D. Cal. 1998) (citing to *United States v. Halbert*, 712 F.2d 388, 390 (9th Cir. 1983)). Furthermore, several courts have been presented with the argument that while compelled psychiatric testimony is appropriate in response to an insanity defense, it is inappropriate in response to a mental infirmity defense other than insanity. The courts have overwhelmingly rejected this distinction as being irrelevant in the context of the defendant's privilege. *See Commonwealth v. Morley*, 681 A.2d 1254, 1258 n.5 (Pa. 1996) (citing cases and stating "whether one defense can truly be characterized as involving issues of 'guilt' whereas another cannot, simply [does] not advance our analysis"); *see also Commonwealth v. Diaz*, 730 N.E.2d 845, 852 n.6 (Mass. 2000).

when faced with a defendant who seeks to negate the mens rea of the charged crime through expert testimony. In *White*, the defendant, asserting diminished capacity, argued that a court-ordered examination concerning an element of the crime "which the government bears the burden of proving" would violate the Fifth Amendment. *White*, 21 F. Supp. 2d at 1198. We find the court's reasoning instructive:

> The Fifth Amendment does not bar the government's ability to access the same type of evidence, and a fair and effective criminal process requires that the government "be able to follow where the defendant has led."
>
> The fact that White's mental state is an element of the crime which the government must prove does not alter this conclusion. . . . Diminished capacity may not technically be an insanity defense, but both defenses focus on a defendant's mental capacity. The insanity defense "operates to completely excuse the defendant whether or not guilt can be proven," while the diminished capacity defense "is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime." Both defenses thus hinge on the workings of a defendant's mind at the time of the offense. No principled reason exists to allow psychiatric probing of these workings when insanity is at issue but to disallow it on the issue of diminished capacity.

*Id.* at 1200 (citations omitted). Similarly, in *United States v. Kessi*, 868 F.2d 1097 (9th Cir. 1989), the defendant's expert testified concerning the defendant's ability to form the requisite intent to commit mail and securities fraud. *Id.* at 1108. Specifically, the expert testified that the defendant did not fully understand his actions due to posttraumatic stress disorder. *Id.* The court ruled that it was proper to admit the testimony of

the State's expert witness to counter the defendant's psychiatric evidence once the defendant opened the door. *Id.*

¶ 13. The same analysis applies in this instance where Davis is asserting his innocence on the basis of the *lack* of a mental infirmity. Analogous to the cases cited above, he opens the door to state compelled evaluation by injecting evidence of a character trait for sexual deviancy into the trial. It simply does not matter for Fifth Amendment purposes whether Davis is using this evidence as part of an affirmative defense or attempting to persuade the jury as to an element of the offense upon which the government has the burden of proof. Such a rule allows for reciprocal discovery of psychiatric defenses and promotes "society's conduct of a fair inquiry into the defendant's culpability." *White,* 21 F. Supp. 2d at 1200 (citation omitted).

¶ 14. Fundamental fairness was at the heart of our decision in *Maday,* a case which supports the State's argument that it should be entitled to a reciprocal examination of Davis by its own expert. In *Maday,* the State retained experts to examine the sexual assault victims and proposed to offer the experts' opinions that the behavior of the victims was consistent with the behavior of other victims of sexual assault. *Maday,* 179 Wis. 2d at 357. In response, Maday requested an order requiring that the children submit to psychological examinations by qualified experts selected by Maday. *Id.* at 350. We recognized the need to balance the interests of the victims' privacy against "the constitutional right of the defendant to a full and fair explication of the evidence," *id.* at 358, and concluded that "[f]undamental fairness requires that Maday be given the opportunity to present relevant evidence to counter [the expert testimony] from the state." *Id.* at 357.

¶ 15. Davis argues that *Maday* should not apply to this case because it was premised on constitutional rights reserved for the accused. We recognize that *Maday* factually differs from the instant situation in that there it was the State which planned to use expert psychological testimony to bolster its case. However, we also noted in *Maday* that the defendant's constitutional right to present witnesses and evidence is not absolute; the defendant must comply with established rules of procedure in order to accommodate the State's interest in the trial process—fairness and the reliable ascertainment of the truth. *Id.* at 354. We conclude that fundamental fairness requires that the State be allowed reciprocal discovery under these facts as well.

¶ 16. Reciprocal discovery means that the State is not limited to responsive mechanisms such as cross-examining the defense expert or calling its own nonexamining expert to counter Davis's *Richard A.P.* testimony. In *Maday*, we expressed the view that generally the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony. *Maday*, 179 Wis. 2d at 356–57. We agree with the State that in a jury trial, the opinion of an expert who has interviewed the defendant and administered a battery of psychological tests will almost certainly be accorded greater weight than the opinion of an expert who has never met the defendant. Therefore, Davis must submit to a psychiatric interview by a state-selected expert or else forego the presentation of the *Richard A.P.* testimony. To hold otherwise would deprive the State of the only effective means it has of controverting Davis's proof on whether he has a diagnosable sexual disorder, an issue that he proposes to interject into the case.

¶ 17. Davis contends that *State ex rel. LaFollette v. Raskin*, 34 Wis. 2d 607, 150 N.W.2d 318 (1967),

commands a different outcome. He claims that under *Raskin* and its progeny, evidence derived from a compelled psychiatric examination into a defendant's mental condition cannot be offered before a jury on the issue of guilt without violating the defendant's Fifth Amendment privilege. He relies in part on the following language:

> The submission to [a compulsory mental] examination under the plea of insanity should not constitute a waiver of privilege against self-incrimination. When it appears any inculpatory statements have been made by the accused during the examination, he should have his privilege . . . recognized and protected at the trial by a sequential order of proof so that such evidence will not be admitted while the jury is determining the issue of guilt.

*Id.* at 622–23. *Raskin* prevents the State from using incriminating statements the defendant may make during the psychological examination on the question of sanity to prove the legally and factually separate issue of guilt or innocence. In other words, the *Raskin* court implemented the bifurcated trial to accommodate the defendant's Fifth Amendment right while still assuring that the State will be treated fairly in the sanity phase by being able to use the results of a compulsory mental exam.

¶ 18. Unlike insanity, the issue of whether a defendant is less likely to have committed a sexual crime because he or she lacks a character trait for sexual deviancy cannot be separated from the issue of guilt. Clearly, the purpose for which the defense introduces *Richard A.P.* evidence is to rebut one of the elements of the charged crime; this is not an issue that *Raskin* addressed. Nor do we believe *Raskin* prevents the use of compelled testimony on the issue of guilt or innocence

when the defendant introduces expert testimony on his or her character for sexual disorders.

¶ 19. Finally, Davis warns that allowing the State to use compelled psychiatric testimony to counter the *Richard A.P.* testimony would "impact every case in which a defendant offers character evidence." We disagree. The underlying rationale for allowing such testimony is fairness. Because *Richard A.P.* testimony has been generated specifically for use at trial and is delivered by an expert witness, the State would be handicapped in rebutting such evidence were it limited to the tools of cross-examination and presentation of a nonexamining expert. On the other hand, we need not be concerned with these issues in the context of lay character witnesses. A state-selected examining expert simply is not needed to counter the testimony of a lay character witness and, accordingly, our holding does not extend to that situation.

¶ 20. We conclude, therefore, that a defendant who offers expert testimony to show he or she lacks the psychological profile of a sex offender puts his or her mental status at issue and thereby waives the right against self-incrimination. Based upon concerns of fairness and the quest for truth in the criminal trial process, we further hold that a defendant who manifests the intent to present such evidence may be ordered to submit to a psychiatric evaluation by a state-selected expert. We therefore reverse the order of the trial court and remand for further proceedings consistent with this opinion. If Davis, after submitting to a psychological exam by the State's expert, later changes his mind and foregoes the presentation of the *Richard A.P.* testimony, then the prosecution is barred from

introducing any evidence derived from the state-sponsored exam on the issue of guilt.

*By the Court.*—Order reversed and cause remanded.