STATE of Wisconsin, Plaintiff-Appellant,†

v.

Glenn E. DAVIS, Defendant-Respondent-Petitioner.

Supreme Court

*No. 00–2916–CR. Oral argument April 10, 2002.—Decided June 26, 2002.*

2002 WI 75

(Also reported in 645 N.W.2d 913.)

---

† Motion for reconsideration denied 9-20-02.

---

3

For the defendant-respondent-petitioner there were briefs by *James M. Shellow and Shellow & Shellow*

S.C., Milwaukee, and *Angela Kachelski* and *The Shellow Group,* Milwaukee, and oral argument by *James M. Shellow.*

For the plaintiff-appellant the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Glenn Davis (Davis) petitioned this court to review a court of appeals' decision, which held that, because he intended to introduce expert psychological testimony at trial pursuant to *State v. Richard A.P.,* 223 Wis. 2d 777, 589 N.W.2d 674 (Ct. App. 1998), he effectively waived his right against self-incrimination and could be ordered to submit to a psychological examination by a state-selected expert. *Richard A.P.* evidence is evidence introduced by the defendant to show that he lacked the psychological characteristics of a sex offender and therefore was unlikely to have committed the charged crime.

¶ 2. We address two issues on review. The first issue is whether *Richard A.P.* evidence is admissible at trial. We conclude that such evidence may be admissible pursuant to the statutes governing both character evidence and expert testimony. The circuit court must closely scrutinize such evidence, however, for its relevancy, its probative value, and its potential for danger of unfair prejudice or confusion to the jury. In this case, because the circuit court never made a determination as to the admissibility of the evidence, we remand for such a determination on this issue.

¶ 3. The second issue we address is whether, when a defendant notifies the state that it intends to introduce *Richard A.P.* evidence at trial, the court may compel the defendant to undergo a psychological exami-

8

nation by a state-selected expert. We conclude that a defendant may be compelled to submit to such an examination if the defendant's expert testifies, either implicitly or explicitly, to facts surrounding the crime. In such instances, the defendant uses the expert as a surrogate to assert his or her own statements about facts on the crime and thereby waives the right against self-incrimination. Thus, waiver of the right in this case depends on the testimony of the expert; it is not waived simply by introducing the expert's testimony. We therefore reverse the court of appeals' decision and remand for further proceedings on the issue of waiver as well.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 4. Davis was charged in Ozaukee County Circuit Court. with repeated sexual assault of a child, contrary to Wis. Stat. § 948.025 (1999–2000),[1] and second-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(2). These charges stemmed from alleged sexual contact that he had with his daughter. His daughter alleged that Davis had sexually abused her from the time she was four years old until she was about ten years old. Following a preliminary hearing and the filing of the information, Davis entered not guilty pleas to these charges.

¶ 5. During pre-trial proceedings, Davis filed a notice with the court that he intended to call Dr. Bronson Levin to testify at trial. Levin had interviewed Davis and conducted a series of psychological tests on Davis. Davis stated that Levin would testify, consistent with *Richard A.P.,* that Davis does not exhibit character traits consistent with a sexual disorder such as pedo-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

philia and that, because Davis does not possess such character traits, he would have been unlikely to have committed any sexual assault on his daughter. Levin would also testify on the data upon which his opinion is based.

¶ 6. In response, citing *State v. Maday,* 179 Wis. 2d 346, 507 N.W.2d 365 (Ct. App. 1993), the State of Wisconsin (State) filed a motion to compel Davis to submit to a reciprocal psychological examination by an expert selected by the State. Davis objected, arguing that the holding in *Maday* did not require him to submit to any examination by the State and that such a compelled examination implicated his right against self-incrimination.

¶ 7. The circuit court, the Honorable Thomas R. Wolfgram presiding, denied the State's request for a psychological examination of Davis by its own expert. The court concluded that such an examination would violate Davis's right against self-incrimination. The court reserved for future consideration whether Levin's expert testimony would be admissible at trial. The State filed a petition for leave to appeal the circuit court's nonfinal order. The court of appeals granted this petition.

¶ 8. The court of appeals, in a published opinion, reversed the circuit court's order, holding that the State could compel Davis to submit to an examination by a psychologist selected by the State based on his intent to introduce *Richard A.P.* expert testimony. *State v. Davis,* 2001 WI App 210, ¶ 1, 247 Wis. 2d 917, 634, N.W.2d 922. The court held that a defendant who presents such expert testimony places his or her mental status at issue and therefore waives his or her right against self-incrimination. *Id.* As a result, based on concerns of fundamental fairness to provide the State with equal

access to the same quality of psychological evidence, the court concluded that the defendant could be ordered to submit to a psychological evaluation by an expert chosen by the State. *Id.* (citing *Maday,* 179 Wis. 2d at 357). The court remanded for further proceedings consistent with its opinion. *Id.* Davis requested review.

## II. *RICHARD A.P.*/ADMISSIBILITY OF PROFILE EVIDENCE

■

¶ 9. We begin by examining an issue presented in *Richard A.P.,* that is, whether a defendant may present expert testimony to show that the defendant lacks the characteristics of a sexual offender and is therefore unlikely to have committed the alleged sexual assault. Whether this evidence is generally admissible under our state's rules of evidence is a question of law that we decide de novo. *See State v. Flattum,* 122 Wis. 2d 282, 305–06, 361 N.W.2d 705 (1985).

¶ 10. In *Richard A.P.,* Richard was charged and convicted for sexual contact with a child and for intimidation of a victim. *Richard A.P.,* 223 Wis. 2d at 779. Before trial, Richard filed a motion in limine requesting permission to introduce expert testimony from a psychologist who had evaluated Richard. *Id.* at 790–91. The motion alleged that the psychologist would testify that " '[Richard's] sexual history and his responses to specific testing about his sexual behavior did not show any evidence of any diagnosable sexual disorder.' " *Id.* at 791. The psychologist would then testify that, absent such a diagnosable disorder, it is unlikely that Richard would have molested the child. *Id.* The circuit court denied admission of the psychologist's testimony because the psychologist could not say that the absence of any sexual disorder made it impossible for Richard to

have committed the crime. *Id.* at 791–92. Richard appealed this evidentiary determination. *Id.* at 779–80.

¶ 11. On appeal, the State conceded that the circuit court's reason for denying admissibility was incorrect. *Id.* at 792. Still, the State argued that the circuit court did not err in denying admission of this evidence because such testimony was not admissible character evidence. *Id.* The court of appeals concluded otherwise, holding that such evidence was relevant and admissible under the rule governing expert testimony "operating in tandem" with the rule governing character evidence. *Id.* at 795.

¶ 12. In reaching this conclusion, the court first looked to the law governing expert testimony. It noted that expert testimony is admissible " 'if it is relevant' and if it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 791 (citation omitted). The court concluded that the expert's testimony in its case was admissible because it would have assisted the jury in determining whether Richard committed the charged offense by providing expert opinion on the likelihood that Richard committed the crime in light of his psychological profile. *Id.* at 792.

¶ 13. The court also examined the law governing character evidence, which allows the defendant to present evidence of any pertinent trait of his or her character. *Id.* at 792–93. Such evidence, it noted, could be presented through testimony as to reputation or by testimony in the form of an opinion. *Id.* at 793. Richard sought to introduce his expert testimony in order to show that he did not exhibit character traits consistent with a sexual disorder. The court noted that such expert testimony had been used in other cases to inform jurors of the behavior profiles of the victims of crimes. *Id.* at

12

793–94 (citing *State v. Pulizzano,* 155 Wis. 2d 633, 657–58, 456 N.W.2d 325 (1990) (the court suggested that profile evidence pertaining to battered woman's syndrome may be admissible if supported by expert testimony); *King v. State,* 75 Wis. 2d 26, 38–39, 248 N.W.2d 458 (1977) (the court ruled that expert opinion testimony concerning the defendant's general character trait of nonhostility and nonaggressiveness was admissible)). The court upheld the admissibility and relevancy of the evidence.

¶ 14. The State contends that *Richard A.P.* should be overturned because this type of evidence has low probative value and is substantially outweighed by dangers presented by this evidence. It argues that only two other states have allowed such evidence, *see People v. Stoll,* 783 P.2d 698 (Cal. 1989), and *Nolte v. State,* 854 S.W.2d 304 (Tex. Ct. App. 1993), and that a majority of other states have excluded such evidence, in some instances because of its low probative value, *see, e.g., State v. Floray,* 715 A.2d 855 (Del. Super. Ct. 1997). Based on this low probative value and the inherent dangers involved, the State urges us to follow cases in which the court has excluded evidence on public policy grounds. *See State v. Peters,* 192 Wis. 2d 674, 689 n.8, 534 N.W.2d 867 (Ct. App. 1995) (citing two examples of such public policy determinations: *State v. Dean,* 103 Wis. 2d 228, 307 N.W.2d 628 (1981) (prohibiting the admission of polygraph test results in criminal cases) and *Steele v. State,* 97 Wis. 2d 72, 294 N.W.2d 2 (1980) (expert psychiatric testimony regarding a defendant's capacity to form intent held inadmissible when based on the defendant's mental health history)). The State argues that a case-by-case determination on admissibil-

ity should be avoided because it would be too burdensome and would outweigh any probative value of the evidence.

■

¶ 15. We conclude that a blanket restriction on *Richard A.P.* evidence is unwarranted. Discretion to admit or exclude such evidence remains with the circuit court. We agree with the conclusions reached by the court of appeals in *Richard A.P.* and specifically adopt its reasoning.

■

¶ 16. The rules on character evidence and expert testimony allow for the admissibility of *Richard A.P.* evidence. Under our rules of evidence, a defendant may introduce "pertinent trait[s]" of his or her character as evidence. Wis. Stat. § 904.04(1)(a). "Pertinent" refers to the relevance of the traits. 7 Daniel Blinka, *Wisconsin Practice: Wisconsin Evidence* § 404.4, at 133 (2d ed. 2001). Thus, like all admissible evidence, character evidence must be relevant to the facts at issue. Relevancy has two facets: (1) the evidence must relate to a fact or proposition that is of consequence to the determination of the action and (2) the evidence must have probative value, that is, a tendency to establish those consequential propositions. *Id.* at § 401.1 at 82. A defendant may introduce such relevant character evidence through opinion testimony. Wis. Stat. § 904.05(1).

■

¶ 17. Expert testimony is permitted when specialized knowledge will assist the trier of fact. *See* Wis. Stat. § 907.02. Again, relevancy of the testimony is an essential requirement for the admissibility of such expert testimony. Blinka, *supra,* § 702.2, at 473. In addition, admissibility of the expert testimony depends

on the qualifications of the expert and the usefulness of the testimony to the trier of fact. *Id.* The testimony is useful if it will assist the trier of fact to understand evidence or to determine a fact in issue. *Id.;* Wis. Stat. § 907.02.

¶ 18. Davis's expert will allegedly testify to the general character traits of sexual offenders, the tests used to determine whether an individual possesses such character traits, his findings on whether Davis possesses such character traits, and, based on these results, the likelihood that Davis committed the sexual assault. Such traits regarding the defendant's propensity to commit sexual assault are pertinent traits of his character. This evidence relates to a consequential fact, that is, whether the defendant committed sexual misconduct with a child. Further, this evidence has probative value in sexual assault cases, where there is often no neutral witness to the assault and there is seldom any physical evidence implicating the defendant. Such profile evidence may be extremely important to the defense. Such testimony may also be useful to the trier of fact, helping it to determine a fact in issue, that is, whether the defendant committed the crime, by showing circumstantial evidence of the defendant's innocence.

¶ 19. Indeed, as the State contends, such evidence is not typical character evidence. This evidence must be presented through expert testimony due to the specialized nature of the character profiles. Typically, character witnesses will consist of lay witnesses who testify to the defendant's character in the community based on their knowledge of the defendant prior to the commission of the crime. However, the statutory language contains broad language to include all "pertinent trait[s]" of the defendant's character, regardless of

15

whether this character evidence is founded on knowledge prior to the alleged assault or based on tests conducted after criminal charges have been filed. Further, Wisconsin has traditionally provided broad admissibility to expert testimony. *State v. St. George,* 2002 WI 50, ¶ 39, 252 Wis. 2d 499, 643 N.W.2d 777.

¶ 20. The State warns that allowing such evidence leads to a "battle of experts" on an issue that is not central to the case. However, a battle between experts is a frequent occurrence in criminal cases where specialized knowledge on a relevant issue is required. In such cases, *Richard A.P.* evidence may be highly relevant. We therefore find this argument unpersuasive.

¶ 21. The State also asserts that such expert testimony wastes the jury's time and may mislead the jury into thinking that reasonable doubt is present because the defendant lacks the character traits of a sexual offender. However, the fact that the defendant may not possess the relevant character traits of a sexual offender will not necessarily lead to an impermissible inference of reasonable doubt. We entrust the circuit court to act as gatekeepers to unduly prejudicial evidence in this respect, and when admitted, we conclude that juries, in light of an instruction from the court, will afford the proper weight to such evidence on character traits which is admitted to show circumstantial evidence that the defendant is not guilty. We recognize that impermissible inferences may be more likely to occur in instances where the expert testifies that, based on his or her lack of character traits of a sexual offender, the defendant is unlikely to have committed the crime. It therefore must be emphasized that the circuit court retains discretion in admitting such evi-

16

dence and must carefully scrutinize such *Richard A.P.* expert testimony in each case for its admissibility.

¶ 22. Finally, the State warns that such evidence should be inadmissible because it lacks reliability. Sexual offenders, the State asserts, are such a heterogeneous group and share so few characteristics that such evidence will not help the jury. Further, they contend that there are no psychological tests that can accurately determine whether a person will or will not sexually abuse a child. As Davis points out however, in Wisconsin, the reliability of expert testimony is an issue for the trier of fact, not the circuit court as a predicate for admissibility. *Peters,* 192 Wis. 2d at 690. Reliability of expert testimony is something that is subject to challenge on cross-examination in Wisconsin. *Id.* The trier of fact must then determine the reliability of such evidence in light of differing opinions by experts. *See Dean,* 103 Wis. 2d at 262. For this reason, we leave any determination on reliability of such evidence to the trier of fact.

¶ 23. Other jurisdictions limit *Richard A.P.*-type evidence based most often on its reliability. *See, e.g., State v. Cavallo,* 443 A.2d 1020, 1026–29 (N.J. 1982); *but see, Floray,* 715 A.2d at 859–60 (courts also often limit such evidence based on its own state rules governing character evidence). The test in Wisconsin, however, is one of relevance, and under our state rules, we find that such evidence may be admissible. Our decision is supported by California decisions, which also similarly find such evidence may be admissible as character evidence. *See Stoll,* 783 P.2d at 707.

¶ 24. In closing, we note that the legal support underpinning *Richard A.P.*—in particular *King*—provides support for the conclusion that *Richard A.P.*

evidence may be admissible. In *King,* the defendant, charged with first-degree murder, introduced expert psychological testimony to show that the defendant was not suffering from any mental disorder and that the criminal act was inconsistent with his nonaggressive personality. *King,* 75 Wis. 2d at 34–35. The court concluded that this expert opinion testimony, relating to the defendant's character, was admissible under the rules for character evidence. *Id.* at 38–39.

¶ 25. The State argues that the *King* decision is difficult to reconcile with this court's holding in *Steele. Steele,* however, was a narrow holding. *See Flattum,* 122 Wis. 2d at 302. In *Steele,* this court concluded that a defendant may not present expert testimony on the defendant's mental capacity to form criminal intent when based on the defendant's mental health history. *Steele,* 97 Wis. 2d at 97–98. The evidence presented in this case is distinguishable. Here, the evidence is not introduced to show that the defendant lacked the mental capacity to form the criminal intent required. *See United States v. Webb,* 625 F.2d 709, 710–11 (5th Cir. 1980). The character evidence introduced in this case is used as circumstantial evidence to show the unlikelihood that he committed the crime. As a result, we conclude that *Steele* does not limit our decision in this case.

■■■

¶ 26. On the whole, we conclude that *Richard A.P.* evidence may be introduced by a defendant in some cases consistent with Wisconsin rules of evidence as discussed above. In this case, however, no ruling has been made as to the admissibility of Levin's testimony. For this reason, even though such evidence may be admissible, the matter must be remanded for the circuit court's determination.

18

## III. COMPULSORY EXAMINATION/RIGHT AGAINST SELF-INCRIMINATION

¶ 27. Having determined that *Richard A.P.* evidence may be admissible in some cases, the next issue is whether a defendant who intends to introduce *Richard A.P.* evidence may be compelled to undergo an examination from a state-selected expert without violating the defendant's right against self-incrimination.

¶ 28. The State argues that a defendant who intends to introduce *Richard A.P.* expert testimony waives his or her right against self-incrimination by placing his or her mental status at issue. The State argues that this waiver derives from the fact that the expert's testimony is based on statements that the defendant has made to the expert and that the expert's testimony essentially amounts to the defendant's introduction of his or her own statements of the crime charged—thereby waiving the right against self-incrimination. As a result, the State asserts that a reciprocal compelled examination by an expert selected by the State is appropriate and the only fair and effective way for it to counter the defendant's introduction of *Richard A.P.* evidence. The State acknowledges that its use of this evidence is limited—it may only use the evidence obtained from its own expert's psychological examination of the defendant to *rebut* the testimony of the defendant's psychological expert. It cannot introduce this evidence in its case-in-chief.

¶ 29. The State admits that there is no case law directly on point for the proposition that it advances—that is, that a defendant waives his right against self-incrimination by introducing *Richard A.P.* profile evidence at trial, thereby allowing the court to order a

19

compelled examination by the state. However, it argues that there is analogous support in cases where courts have found a waiver of the privilege against self-incrimination based on the defendant's introduction of expert psychological testimony in support of an insanity defense, *see State v. Hutchinson,* 766 P.2d 447 (Wash. 1989); in support of a diminished capacity defense, *Commonwealth v. Morley,* 681 A.2d 1254 (Pa. 1996); during the penalty phase of a trial or at sentencing, *Savino v. Commonwealth,* 391 S.E.2d 276 (Va. 1990); and to show battered wife syndrome in support of self-defense claim, *State v. Briand,* 547 A.2d 235 (N.H. 1988). The State admits that, unlike these cases, Davis is not claiming that he lacked the requisite mental capacity to commit the crime. However, the State contends that the *rationale* from these cases supports its proposition—that is, that the defendant's introduction of expert psychiatric testimony on his or her mental status constitutes a waiver of the right against self-incrimination.

¶ 30. Davis argues that his introduction of *Richard A.P.* expert testimony does not constitute a waiver of his right against self-incrimination. He distinguishes the State's cases from his case. He argues that the cases cited by the State mostly involve defendants who admitted to committing the crime charged and who introduced expert psychological testimony to show that they lacked the mental capacity to form the requisite intent to commit the crime. In such cases, an examination can be compelled, Davis argues, because it is the defendant who injects this new issue into the case, on which the defendant bears the burden of proof. In contrast, in his case, he has not admitted to committing the crime and is not introducing his expert psychological testimony to show that he lacked the requisite intent. Instead, he is

offering evidence to support his innocence on the elements of the crime, on which the State carries the burden of proof. A compelled examination, he contends, will now allow the State to gather incriminating testimony from him on an element of the crime.

¶ 31. The court of appeals rejected Davis's distinction, concluding that his introduction of *Richard A.P.* evidence was essentially the same as the introduction of expert testimony to show lack of mental capacity to form intent. The court stated:

> We are convinced that Davis's affirmative defense/burden of proof approach elevates form over substance. *See United States v. Halbert,* 712 F.2d 388, 390 (9th Cir. 1983). While Davis is not technically asserting an affirmative defense, he is certainly offering a theory of defense. We see no reason to distinguish the ability of the State to compel psychiatric testimony in response to an affirmative defense from the use of such testimony to rebut the defendant's theory of defense based on expert character evidence. Both instances place the defendant's mental status in issue and "hinge on the workings of a defendant's mind at the time of the offense." *United States v. White,* 21 F. Supp.2d 1197, 1200 (E.D. Cal. 1998).

*Davis,* 2001 WI App 210, ¶¶ 11, 13.[2] As a result, the court of appeals concluded that Davis's introduction of *Richard A.P.* expert testimony, like the introduction of expert psychiatric testimony to prove insanity or diminished capacity, constituted a waiver of his privilege

---

[2] The court of appeals' reasoning very closely followed the reasoning from *U.S. v. White,* 21 F. Supp.2d 1197, 1200 (E.D. Cal. 1998), where the court held that a defense based on diminished capacity would be treated the same as a defense based on insanity for purposes of a compulsory psychiatric examination by the state.

against self-incrimination. We do not reach this same conclusion. We disagree that the mere introduction of such *Richard A.P.* evidence necessarily constitutes a waiver of the right against self-incrimination in all instances.

¶ 32. The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The Wisconsin Constitution provides for approximately the same protection. Wis. Const. art. I, § 8(1).

¶ 33. Whether a compulsory examination is constitutionally permissible is a question of constitutional law that we ultimately decide de novo. *Maday,* 179 Wis. 2d at 353. The circuit court's factual findings underlying any such decision are to be upheld unless they are contrary to the great weight and clear preponderance of the evidence. *Id.*

¶ 34. In cases where the defendant introduces expert testimony in support of a defense related to his or her mental capacity, not all courts have specifically required a waiver of the right against self-incrimination to occur before ordering a compulsory examination. *See Briand,* 547 A.2d 235 (N.H. 1988) (identifying two general approaches that courts have taken in such cases). Some courts conclude that a compulsory examination is constitutionally permissible—that is, *not in violation* of the right against self-incrimination—based on the reasoning that the state must be afforded the same opportunity to obtain the same type and quality of psychological evaluation as the defendant when the defendant raises the issue of his or her mental capacity. *Id.* at 238; *see also U.S. v. White,* 21 F. Supp.2d 1197,

1200 (E.D. Cal. 1998); *Hutchinson,* 766 P.2d at 452–53. The overriding concern in such cases is that the finder of fact must be given a fair and full assessment of the defendant's culpability when the defendant raises this issue. *Id.*

¶ 35. In contrast, other courts have held that a compulsory examination by the state is constitutionally permissible because the defendant *waives* the privilege against self-incrimination by showing his or her intent to introduce expert psychiatric testimony in support of a defense related to his or her mental capacity. *Briand,* 547 A.2d at 238; *see also, State v. Fair,* 496 A.2d 461 (Conn. 1985); *Morley,* 681 A.2d 1254, *Savino,* 391 S.E.2d 276. In turn, based on this waiver and fairness considerations to the state, courts have justified ordering compulsory examinations. The *Briand* decision shows some courts' justification for finding that a waiver occurs in such cases.

¶ 36. In *Briand,* the defendant was charged with first-degree murder for shooting her husband. *Briand,* 547 A.2d at 236. Before trial, the defendant informed the state that she had undergone a psychological examination from her own expert and that she intended to present the psychologist's testimony to show either that she suffered from battered woman's syndrome (in support of a potential self-defense plea) or that she was provoked (in support of the lesser-included offense of manslaughter). *Id.* The court concluded that the defendant's mere notice of this expert testimony constituted a waiver of her privilege against self-incrimination. *Id.* at 239. The court explained:

> Because the expert's testimony is thus predicated on the defendant's statements, the latter are explicitly or implicitly placed in evidence through the testimony of the expert during his direct and cross-examination.

23

> Since a defendant would waive his privilege against compelled self-incrimination if he took the stand and made those same statements himself, his decision to introduce his account of relevant facts indirectly through an expert witness should likewise be treated as a waiver obligating him to provide the same access to the State's expert that he has given to his own, and opening the door to the introduction of resulting State's evidence, as the State requests here, to the extent that he introduces comparable evidence on his own behalf.

*Id.* We find this reasoning persuasive. We conclude that such waiver must occur in this case before the State is entitled to an examination of the defendant by its own expert.

¶ 37. Based on the type of evidence presented in this case, however, we are not prepared to conclude that the defendant automatically waives his or her privilege simply by introducing *Richard A.P.* character profile evidence. As Davis contends, *Richard A.P.* evidence is distinguishable from expert testimony related to a defendant's mental capacity to form criminal intent. In particular, *Richard A.P.* evidence is introduced as character evidence, used as circumstantial evidence to show that the defendant did not commit the crime. The defendant has not introduced this evidence to support a particular defense related to his mental capacity. Therefore, we conclude that the mere introduction of *Richard A.P.* profile evidence does not constitute waiver of the right against self-incrimination.

¶ 38. We are also not convinced that the state needs a reciprocal psychological examination in order to adequately counter such *Richard A.P.* character evidence. When the expert testimony is introduced in support of a defense related to the defendant's mental

capacity to form the requisite intent, the need for the state to counter this evidence with a reciprocal examination is greater because the defendant has clearly placed his mental capacity at issue to directly address an element of the crime. *Richard A.P.* evidence, however, is not introduced to support a defense based on his mental capacity. It is circumstantial evidence of his innocence. Further, allowing a compelled examination to counter character evidence presents a great danger to the defendant that this compelled examination will result in incriminating testimony that the state may use in its case-in-chief or in rebutting this character evidence. This danger outweighs any fairness considerations in favor of the state in such cases involving character evidence.

¶ 39.　Nevertheless, the State is justifiably concerned in this case that the introduction of *Richard A.P.* expert testimony may amount to nothing more than the defendant's own denial of the crime through a surrogate. For this reason, we conclude that a waiver of the right against self-incrimination may result in some cases.

¶ 40.　A defendant who seeks to introduce *Richard A.P.* evidence must notify the court and the state that he or she intends to introduce this evidence at trial and precisely identify the exact testimony that the expert will provide at trial and the bases for the expert's opinion. Upon this disclosure, the state may then bring a motion requesting the court to compel the defendant to undergo an examination by an expert from the state. On this motion, the circuit court must then carefully examine the defendant's disclosure regarding his or her expert's testimony and the expert's basis for his or her opinion. If this disclosure statement shows that the

expert will either explicitly or implicitly provide testimony regarding relevant facts surrounding the alleged crime that amounts to the defendant's own denial of the crime, the court may then order the defendant to undergo a reciprocal examination from the state based on the fact that the defendant has waived his or her right against self-incrimination. In this way, the defendant is permitted to introduce expert opinion testimony pursuant to *Richard A.P.*, but restricted from introducing statements that amount to nothing more than the defendant's own statements on the crime.

¶ 41. In his reply brief, Davis asserted that he did not intend on using the opinions of Levin as a mechanism to present his version of the facts of the alleged offense before the jury. Levin, Davis contends, would only testify to the results of psychological tests and to his opinions based on the results of these tests; Levin would not be used as a conduit. To the extent that Levin will testify that he used only standardized tests that did not require Levin to inquire into the relevant facts surrounding the case, we conclude that no waiver of the right against self-incrimination would have occurred and the State is not entitled to a reciprocal examination of the defendant. However, as he concedes, Davis must disclose all results of Levin's tests to the State if he introduces testimony from Levin. The State may then have its own expert examine these tests and testify to rebut any testimony from Levin. The State, we conclude, is not unfairly prejudiced by this result. The State is afforded sufficient means to question this evidence through cross-examination and through rebuttal expert testimony.

¶ 42. The State contends that its need for a compulsory examination is based in part on the fact that the

jury will give more weight to an expert from the defendant because his or her expert will have personally conducted the tests on the defendant and interviewed the defendant. We do not agree with this assertion as it pertains to *Richard A.P.* expert testimony. Cross-examination and rebuttal expert witnesses will provide the State with adequate tools to counter such evidence without subjecting the defendant to a potentially prejudicial compelled examination by the State's expert. With appropriate instructions from the court, we have confidence that the finder of fact will give fair weight to this evidence, even though the State has not conducted personal interviews with the defendant.

■■■

¶ 43. At oral argument, Davis proposed a different solution to this case: a jury instruction. He argued that, instead of allowing the State to conduct its own examination of the defendant, we should instead implement a rule where, if the defendant's expert testifies to facts learned from the defendant, the circuit court should instruct the jury not to accept as true the facts that the expert testified to pertaining to the defendant, unless they were supported by the testimony of others with personal knowledge of those facts. An analogous solution was implemented in California; however, there the state's expert is allowed to examine the defendant and, when the state's expert testifies, the court instructs the jury not to regard as true any of the state's expert's statement of the facts on which the expert's opinion is based. *See People v. Danis,* 107 Cal. Rptr. 675, 678 (Cal. Ct. App. 1973). We have given full consideration to all potential options and conclude that the solution adopted above best serves all interests in cases where *Richard A.P.* evidence is presented, without compromising fairness to the state and constitutional

protections of the defendant, but still allowing a full inquiry into the facts by the jury.

¶ 44. Finally, we address *State ex rel. LaFollette v. Raskin,* 34 Wis. 2d 607, 150 N.W.2d 318 (1967), upon which Davis relies. *Raskin* established a bifurcated trial system for defendants pleading not guilty by reason of insanity. In that case, the defendant entered pleas of not guilty and not guilty by reason of insanity to charges of armed robbery and burglary. *Id.* at 612. In light of his insanity plea, he was required to undergo a statutorily-mandated psychiatric examination from a court-appointed expert. *Id.* at 613, 618–19. The *Raskin* court concluded that the defendant's submission to the statutorily-mandated psychiatric examination did not constitute a "waiver of privilege against self-incrimination. *Id.* at 622. Accordingly, the state was prohibited from introducing the results from this examination during the guilt phase of the trial.

¶ 45. Following *Raskin,* Davis argues that he cannot be forced to undergo a compulsory examination by the State simply by introducing expert testimony on his lack of any sexual disorder. He argues that, in such instances, following *Raskin,* he still retains his right against self-incrimination. *Raskin,* however, does not restrict the state's ability to obtain compulsory examinations. Instead, its holding restricts the prosecution, in light of a defendant's right against self-incrimination, from using incriminating statements obtained during a compulsory examination during the guilt phase of trial. Nothing in *Raskin* restricts the court from ordering a compulsory examination when the defendant effectively waives his right against self-incrimination by introducing his or her own statements through a surrogate at the guilt phase of trial. We therefore conclude

that *Raskin* is distinguishable. We conclude, however, that the State is restricted to using any evidence obtained from a compulsory examination only in rebutting defendant's expert testimony. *See Buchanan v. Kentucky,* 483 U.S. 402, 422–23 (1987).

## IV. CONCLUSION

¶ 46. In sum, we conclude that a defendant may introduce expert testimony to show that he or she lacks the character traits of a sexual offender and that therefore he or she is unlikely to have committed the assault in question. Such evidence is admissible, however, subject to the discretion of the circuit court. We also conclude that the court may compel the defendant to undergo a compulsory examination conducted by an expert selected by the state in certain instances when such evidence is introduced. The court may only order such examinations, however, when the expert will testify, either explicitly or implicitly, on facts surrounding the crime charged. In this case, we remand to the circuit court to (1) determine the admissibility of the defendant's expert testimony in this case and (2) determine whether this testimony will constitute a waiver of the right against self-incrimination, allowing the court to order the defendant to submit to an examination from an expert selected by the State.

*By the Court.*—The decision of the court of appeals is reversed and remanded.

¶ 47. N. PATRICK CROOKS, J. *(dissenting).* I respectfully dissent in order to address two issues. First, although I agree with the majority opinion that *Richard A.P.* evidence is admissible, it should be noted that

29

its admissibility is premised on the unique nature of many sexual assault trials, and we should caution Wisconsin courts that the use of character profile evidence should not be extended to other situations. Second, I disagree with the majority's conclusion that the mere introduction of *Richard A.P.* evidence does not constitute a waiver of the right against self-incrimination. I respectfully dissent because I would affirm the court of appeals' conclusion that "a defendant who offers expert testimony to show he or she lacks the psychological profile of a sex offender puts his or her mental status at issue and thereby waives the right against self-incrimination." *State v. Davis,* 2001 WI App 210, ¶ 20, 247 Wis. 2d 917, 634 N.W.2d 922.

¶ 48. I reluctantly agree with the majority's conclusion that *Richard A.P.* evidence is admissible at a trial on sexual assault charges. The majority's strongest argument for admission of the defendant's character profile evidence is that such evidence "may be extremely important to the defense." Majority op. at ¶ 18. As the majority recognizes, at a trial on sexual assault charges there is often no neutral witness and seldom any physical evidence; thus, the focus becomes a credibility battle. *Id.* Due to this unique nature of many sexual assault cases, *Richard A.P.* evidence may become extremely important for the defense, because it will help to bolster the defendant's credibility. Using *Richard A.P.* evidence outside the scope of a sexual assault case, however, potentially emasculates the evidence code's rule that character evidence is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion. *See* Wis. Stat. § 904.04(1). New situations should be dealt with

30

and examined on a case-by-case basis.[1] Consistent with this reasoning, therefore, we should caution Wisconsin courts that the holding here does not amount to an endorsement of the use of character profile evidence outside of sexual assault cases. Accordingly, I agree with the majority's holding regarding the admissibility of *Richard A.P.* evidence in sexual assault cases, but I would caution that *Richard A.P.* evidence is not admissible generally in all situations.

¶ 49. In Part III of the majority opinion, I respectfully disagree with the majority's characterization of *Richard A.P.* evidence, and the test created to determine whether such evidence constitutes a waiver of the defendant's right against self-incrimination. The majority concludes that the introduction of *Richard A.P.* evidence—expert testimony that the defendant lacks the characteristics of a sexual offender and is therefore unlikely to have committed the alleged sexual assault—does not amount to waiver of the defendant's right against self incrimination, because it is not introduced to support a particular defense related to the defendant's mental capacity. Majority op. at ¶ 37. Heeding the State's concern that the expert testimony may

---

[1] I acknowledge that in *King v. State*, 75 Wis. 2d 26, 248 N.W.2d 458 (1977), which the majority relies on, the defendant introduced expert psychological testimony, in the form of character evidence, to show that the alleged criminal act, murder, was inconsistent with his nonaggressive personality. I note, however, that at issue in that case was not the admissibility of the expert testimony, but the rebuttal testimony of the State concerning specific prior violent acts of the defendant. Accordingly, I emphasize that new situations should be examined on a case-by-case basis because our holding here does not amount to an endorsement of the use of character profile evidence in all situations.

31

amount to surrogate testimony of the defendant's denial of the assault, however, the majority crafts a test to determine if proposed *Richard A.P.* evidence waives the defendant's right against self-incrimination:

> If this disclosure statement [describing the proposed *Richard A.P.* testimony] shows that the expert will either explicitly or implicitly provide testimony regarding relevant facts surrounding the alleged crime that amounts to the defendant's own denial of the crime, the court may then order the defendant to undergo a reciprocal examination from the [S]tate based on the fact that the defendant has waived his or her right against self-incrimination.

*Id.* at ¶ 40.

¶ 50. I disagree with the majority's test because it is unnecessary and premised on a narrow, and in my view, incorrect, characterization of *Richard A.P.* evidence. Furthermore, the test addresses only whether the expert's testimony amounts to surrogate statements on behalf of the defendant, and ignores the impact on the defendant's right against self incrimination of what I conclude is the core of *Richard A.P.* evidence, the character profile.

¶ 51. Narrowly interpreted, the majority correctly states that *Richard A.P.* evidence does not support a defense related to *mental capacity.* However, it is evidence that, at least implicitly, goes to the defendant's lack of *mental infirmity* and that it is unlikely that without such mental infirmity the defendant would have committed the alleged assault. *Richard A.P.* evidence, by definition, is expert testimony based on an examination of the defendant, concluding that the defendant lacks the personality characteristics of a sexual offender and is, therefore, unlikely to have committed the alleged sexual assault. This personality

profile testimony goes directly to the defendant's sexual experiences, preferences, and attitudes, which puts a defendant's mental status at issue. While I agree with the majority that this character evidence is circumstantial evidence of the defendant's innocence, unlike the majority, I do not draw such a fine, and often difficult, line between mental capacity and mental infirmity. By its nature, therefore, I conclude that *Richard A.P.* evidence puts the defendant's mental status at issue, and use of such evidence thereby waives the defendant's right against self-incrimination.

¶ 52. I find further support for this conclusion in two cases the court of appeals relied on in drawing the same conclusion, *United States v. Kessi,* 868 F.2d 1097 (9th Cir. 1989), and *United States v. White,* 21 F. Supp. 2d 1197 (E.D. Cal. 1998). In *Kessi,* the court concluded that the government was properly allowed to introduce rebuttal expert witness psychiatric testimony to counter the defendant's psychiatric testimony, because the defendant had opened the door by raising the issue of mental status. 868 F.2d at 1108. Similarly, in *White,* the court concluded that it was proper to compel examination of the defendant by the government's expert witness, because the defendant injected the diminished capacity defense. 21 F. Supp. 2d at 1200. The court stated: "The Fifth Amendment does not bar the government's ability to access the same type of evidence, and a fair and effective criminal process requires that the government 'be able to follow where [the defendant] has led.' " *Id.* (quoting *United States v. Byers,* 740 F.2d 1104, 1114 (D.C. Cir. 1984)). I agree with the court of appeals' analogy to *Kessi* and *White* that when a defendant is asserting his or her innocence on the basis of a lack of mental infirmity, "he opens the door to [S]tate compelled evaluation by injecting evi-

dence of a character trait for sexual deviancy into the trial." *Davis*, 2001 WI App 210, ¶ 13. "It simply does not matter for Fifth Amendment purposes whether [the defendant] is using this evidence as part of an affirmative defense or attempting to persuade the jury as to an element of the offense upon which the government has the burden of proof." *Id.*

¶ 53. Furthermore, I agree with the court of appeals' application of *State v. Maday*, 179 Wis. 2d 346, 507 N.W.2d 365 (Ct. App. 1993), to this situation. Rather than allow the State to have its own examination, the majority opinion simply provides the results of the defense expert's tests to the State's expert. I respectfully disagree that cross-examination and rebuttal expert witness testimony based only on examination of test results is sufficient to counter the defendant's *Richard A.P.* evidence. Based on fundamental fairness, the State is entitled to reciprocal discovery, and applying *Maday*, I conclude that the only effective rebuttal of psychiatric or psychological opinion testimony is contradictory psychiatric or psychological opinion testimony. I agree with the majority and the court of appeals, however, that the State's use of its expert testimony regarding the defendant's mental status must be for the sole purpose of rebutting the *Richard A.P.* evidence. It should not be allowed in the State's case-in-chief.

¶ 54. Applied here, Davis has waived his right against self-incrimination by clearly stating the intent to introduce Dr. Levin's expert testimony. The proposed testimony is that Davis does not exhibit character traits consistent with a sexual disorder such as pedophilia, and because of his character profile, it would have been unlikely that he committed any sexual assault on his daughter. Davis is using Dr. Levin's testimony to claim

innocence by lack of mental infirmity; thus, he puts his mental state at issue, and has, therefore, waived his right against self-incrimination. Consequently, the court, upon the State's motion, can compel Davis to submit to an examination by an expert for the State. As the court of appeals recognized, however, if Davis changes his mind and foregoes the *Richard A.P.* testimony by Dr. Levin, then the prosecution is barred from introducing any evidence from the compelled exam.

¶ 55. For the reasons stated, I respectfully dissent.

¶ 56. I am authorized to state that Justice DAVID T. PROSSER joins this opinion.