STATE of Wisconsin, Plaintiff-Respondent,†

v.

Steven G. WALTERS, Defendant-Appellant.

Court of Appeals

*No. 01–1916–CR. Submitted on briefs November 27, 2002.— Decided January 15, 2003.*

2003 WI App 24

(Also reported in 659 N.W.2d 151.)

† Petition to review filed.

210

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jenelle L. Glasbrenner* and *David A. Danz* of *Law Offices of Danz, Lettenberger & Glasbrenner, S.C.*, Delavan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Marguerite M. Moeller*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Steven G. Walters appeals from a judgment of conviction for three counts ·of first-degree sexual assault of a child. Walters argues that the trial court erroneously granted the State's request to exclude defense expert testimony regarding witness suggestibility and proper interrogation techniques. We disagree and affirm.

¶ 2. Walters further argues that the trial court erroneously granted the State's request to exclude defense expert testimony regarding character and profile testimony as allowed by *State v. Richard A.P.*, 223 Wis. 2d 777, 589 N.W.2d 674 (Ct. App. 1998). We agree that the trial court erred in denying Walters's request to present *Richard A.P.* evidence and we therefore reverse on this issue and remand for a new trial.

## FACTS

¶ 3. On December 28, 1998, Walters was charged with three counts of first-degree sexual assault of a

child, contrary to Wis. Stat. § 948.02(1) (1999–2000).[1] Both Walters and the State filed discovery motions; the State's motion required the disclosure of all of Walters's witnesses intended to testify at trial, any reports or statements of experts or summaries of experts' findings made in connection with the case, and the results of any physical or mental examinations that Walters intended to offer at trial. Walters complied with the State's discovery request and notified the State via letter that he intended to call expert witnesses at trial. This notification stated, in relevant part:

> As to a list of expert witnesses and witnesses, I can advise you of the following:
>
> 1. Dr. R. Underwager (Expert)
>
> M.Div., Ph.D.,
>
> Director and Licensed Psychologist
>
> Institute for Psychological Therapies
>
> 13200 Cannon City Blvd.
>
> Northfield MN 55057–4405
>
> 2. Dr. H. Wakefield, M.A. (Expert)
>
> Licensed Psychologist
>
> Institute for Psychological Therapies
>
> 12300 Cannon City Blvd.
>
> Northfield MN 55057–4405

Walters indicated that the two experts would be prepared to testify as to "adult behaviors towards children and eliciting statements [and] the characteristics of

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

child molesters" and indicated copies of the experts' reports and results of mental examinations would be forthcoming once completed.

¶ 4. The State then moved to exclude the testimony of Walters's proposed experts. In its motion to exclude testimony of defense experts regarding profile evidence, the State specifically asked the court "to prevent the defense from calling any expert witnesses to testify that [Walters] is less likely to have committed this sexual assault because of some psychological make-up." As grounds for this motion, the State argued "[t]he testimony of [Walters's] experts will not meet the requirement of *State v. Richard A.P.* . . . which the [S]tate believes was wrongly decided . . . ." The State argued that the experts' testimony would invade the province of the jury and its probative value was outweighed by the prejudice to the State.

¶ 5. The State also moved to exclude defense expert testimony on children's memory and suggestibility "because it invades the province of the jury and is testimony commenting on the veracity of a witness." In addition, the State argued that the evidence was not relevant pursuant to Wis. Stat. ch. 904.

¶ 6. Circuit Court Judge John R. Race presided over three days of testimony during offer of proof hearings. Walters's first expert, Dr. Hollida Wakefield, testified that she had administered several psychological evaluations and an intelligence test to Walters. Dr. Wakefield testified that there are personality characteristics that are found more often in people who sexually offend than in the normal population and that she was prepared to testify about those personality characteristics, "[w]hat the types of problems, the types of personalities sex offenders are more likely to have, and that can be contrasted against what I found or compared in

Mr. Walters." She also testified that she had assessed Walters's personality for the finder of fact. Furthermore, she testified that she was ready to testify regarding Walters's personality characteristics and those of known sex offenders but would not give any opinion on ultimate issues of fact, acknowledging that her testimony "doesn't prove something. It gives information for the trier of fact in weighing probabilities."

¶ 7. Dr. Ralph Charles Underwager, another of Walters's proposed experts, also testified at an offer of proof hearing. Dr. Underwager testified about his ability to render an opinion about the type of interviewing the officer used in questioning the alleged victims. Dr. Underwager testified that he would address the quality of the investigative techniques used in this case, indicating that police interviews of the victims failed "to conform to generally accepted guidelines on how to perform investigatory interviews in cases of alleged child abuse."

¶ 8. Walters argued that allowing the experts to make comparisons based on psychological characteristics commonly associated with individuals who commit sexual assault to his psychological characteristics was admissible under *Richard A.P.* and did not interfere with the role of the jury. Judge Race agreed and on December 20, 1999, held that "[w]hether or not the [S]tate likes the *Richard A.P.* case or not, it is still the law which I must follow" and denied both of the State's motions, allowing the testimony of Drs. Underwager and Wakefield.

¶ 9. Pursuant to the standardized judicial rotation in Walworth county, Judge Race was rotated out of felony court and was replaced by Circuit Court Judge James L. Carlson, who then became Walters's trial court judge.

¶ 10. Subsequently, on May 17, 2000, the State filed a motion to reconsider Judge Race's decision. In this motion, the State alleged that "Judge Race was mistaken when he stated that he must follow the holding in *Richard A.P.*" and "[o]bviously *Richard A.P.* is a wrong decision and contrary to precedent nation wide."

¶ 11. Over Walters's objections, Judge Carlson conducted hearings on the State's motion for reconsideration and ordered Walters to present a synopsis of the offer of proof testimony. During both reconsideration hearings, Judge Carlson made reference to another, wholly unrelated, Walworth county sexual assault case. Specifically, at the November 8, 2000 hearing, Judge Carlson stated, "I heard . . . lengthy testimony that these witnesses gave" when, in fact, Judge Carlson had not heard any testimony in Walters's case at that point. Judge Carlson eventually acknowledged that he was referring to testimony in this other unrelated case.

¶ 12. On November 17, 2000, Judge Carlson granted, without written explanation, the State's motion to reconsider, reversing Judge Race's previous decision. Walters filed a motion for an interlocutory appeal, which was denied. Walters was convicted after a jury trial of all three counts of sexual assault of a child on January 23, 2001. Walters appeals.

## DISCUSSION

■

¶ 13. Walters first argues, relying on our decision in *Richard A.P.*, 223 Wis. 2d at 777, that Judge Carlson erred when he granted the State's motion for reconsideration and prohibited him from offering expert testimony regarding profile and personality characteristic evidence. We agree.

217

¶ 14. The admissibility of expert testimony is committed to the discretion of the trial court. *State v. Friedrich*, 135 Wis. 2d 1, 15, 398 N.W.2d 763 (1987). We uphold discretionary decisions of the trial court so long as it considered the relevant facts, applied a correct standard of law and arrived at a reasonable result through a rational thought process. *State v. Peters*, 192 Wis. 2d 674, 685, 534 N.W.2d 867 (Ct. App. 1995). The discretion to admit or exclude *Richard A.P.* evidence remains with the trial court. *State v. Davis*, 2002 WI 75, ¶ 15, 254 Wis. 2d 1, 645 N.W.2d 913, *reconsideration denied,* 2002 WI 121, 257 Wis. 2d 123, 653 N.W.2d 894 (Wis. Sept. 20, 2002) (No. 00–2916–CR).

¶ 15. In *Richard A.P.*, the defendant sought the admission of expert testimony to demonstrate that he did not exhibit character traits consistent with a sexual disorder such as pedophilia. *Richard A.P.*, 223 Wis. 2d at 795. We concluded that this evidence was both relevant and admissible under WIS. STAT. § 907.02, the general rule governing expert testimony, and WIS. STAT. § 904.04(1)(a), the specific statute governing character testimony. *Richard A.P.*, 223 Wis. 2d at 795. *Richard A.P.* evidence is defined as evidence introduced by a defendant to show that he or she lacked the psychological characteristics of a sex offender and therefore was unlikely to have committed the charged crime. *Davis*, 2002 WI 75 at ¶ 1.

¶ 16. In the case at hand, the State argued before the trial court that it was not obligated to follow the holding of *Richard A.P.* because *Richard A.P.* was an "[o]bviously . . . wrong decision and contrary to precedent nation wide." Upon appeal, the State wisely changes tactics. The State now acknowledges the validity of *Richard A.P.*, as recently affirmed in *Davis*, but

218

argues that the trial court here properly determined that otherwise relevant evidence is subject to exclusion under WIS. STAT. § 904.03 if its probative value is substantially outweighed by the danger of unfair prejudice and that such expert testimony is not needed to assist the jury. However, while the trial court did conduct a relevancy analysis, the analysis was colored by the trial court's belief that *Richard A.P.* was seriously limited as authority and that other jurisdictions have held such evidence to be inadmissible.

¶ 17. Thus while we agree with the State that *Davis* applies to the case at hand, we conclude that *Davis* compels a different result here than the one arrived at by the trial court.

¶ 18. The *Davis* court held that "[t]he rules on character evidence and expert testimony allow for the admissibility of *Richard A.P.* evidence" because under WIS. STAT. § 904.04(1)(a), a defendant may introduce "pertinent traits" of his or her character as evidence. *Davis*, 2002 WI 75 at ¶ 16. Thus, like all admissible evidence, character evidence must be relevant to the facts at issue. *Id*. Relevancy has two components: (1) the evidence must relate to a fact or proposition that is of consequence to the determination of the action, and (2) the evidence must have probative value. *Id*. A defendant may introduce such relevant character evidence through opinion testimony. *Id*.

¶ 19. The *Davis* court recognized that Wisconsin has traditionally provided broad admissibility to expert testimony, which is permitted when specialized knowledge will assist the trier of fact. *Id*. at ¶¶ 17, 19; *see also* WIS. STAT. § 907.02. Again, relevancy is an essential requirement for the admissibility of expert testimony

and depends upon the qualifications of the expert and the usefulness of the testimony to the trier of fact. *Davis*, 2002 WI 75 at ¶ 17.

¶ 20. The supreme court held that such traits regarding the defendant's propensity to commit sexual assault are pertinent traits of the defendant's character and relate to a consequential fact, i.e., whether the defendant committed sexual misconduct with a child. *Id.* at ¶ 18. In addition, the *Davis* court concluded, this evidence has probative value in sexual assault cases where there is often no neutral witness to the assault and there is seldom any physical evidence implicating the defendant. *Id.* Such profile evidence may be extremely important to the defendant and may also be useful to the trier of fact, helping it to determine a fact in issue, that is, whether the defendant committed the crime, by showing circumstantial evidence of the defendant's innocence. *Id.* This type of evidence must be presented through expert testimony due to the specialized nature of the character profiles. *Id.* at ¶ 19.

¶ 21. In *Davis*, the Wisconsin Supreme Court expressly declined the State's request to overturn *Richard A.P.* The court unequivocally stated that *Richard A.P.* evidence is admissible at trial pursuant to the statutes governing both character evidence and expert testimony and instructed trial courts to closely scrutinize such evidence for its relevancy, probative value and potential for danger of unfair prejudice or confusion to the jury. *Davis*, 2002 WI 75 at ¶¶ 1–2, ¶¶ 14–15.

¶ 22. The offer of proof in *Davis* is nearly identical to the offer of proof presented here. In *Davis*, the defendant sought to introduce expert testimony that he did not exhibit character traits consistent with a sexual disorder and that because he did not possess such traits,

he would have been unlikely to have committed a sexual assault. *Id.* at ¶ 5. The expert also would have testified to the data upon which his opinion was based. *Id.* Specifically, Davis's expert would have testified to the general character traits of sex offenders, the tests used to determine whether an individual possesses such character traits, the expert's findings on whether Davis possessed said character traits, and the likelihood that Davis committed the sexual assault. *Id.* at ¶ 18.

¶ 23. Here, Dr. Wakefield testified that she had administered several psychological evaluations and an intelligence test to Walters. Dr. Wakefield testified that there are personality characteristics that are found more often in people who sexually offend than in the normal population and that she was prepared to testify about those personality characteristics, "[w]hat the types of problems, the types of personalities sex offenders are more likely to have, and that can be contrasted against what I found or compared in Mr. Walters." She also testified that she had assessed Walters's personality for the finder of fact. Furthermore, she testified that she was ready to testify regarding Walters's personality characteristics and those of known sex offenders.

¶ 24. Walters's proffered evidence from Dr. Wakefield was relevant in that whether or not he possessed traits indicating a propensity to commit sexual assaults relates to a consequential fact, i.e., whether Walters committed sexual misconduct with a child. *See id.* This evidence has probative value here and is not outweighed by any possible danger of unfair prejudice. *See id.* This evidence must be presented through expert testimony due to its specialized nature. *See id.* at ¶ 19. The trial court did not apply the proper legal standard and therefore erred in prohibiting Walters from presenting his *Richard A.P.* evidence.

¶ 25. We cannot ignore the arguments offered by the State at the trial court level at both the motion to exclude before Judge Race and the motion for reconsideration before Judge Carlson. We are troubled by the district attorney's arguments that a trial court is free to ignore published decisions of the court of appeals. Walworth County District Attorney Phillip Koss argued on numerous occasions, and the trial court implicitly agreed, that *Richard A.P.* was "obviously" wrongly decided and need not be followed. While the district attorney may think that *Richard A.P.* was an "obviously" wrong decision and contrary to nationwide precedent, it is the law. Our supreme court has upheld the tenets of *Richard A.P.* in *Davis*.

■

¶ 26. Officially published opinions of the court of appeals have statewide precedential effect. WIS. STAT. §§ 752.41(2), 809.23; *see also Cook v. Cook*, 208 Wis. 2d 166, 186, 560 N.W.2d 246 (1997). Lower courts are bound by the precedent of our published decisions and the decisions of the Wisconsin Supreme Court, whether the lower courts agree with the law or not. A district attorney who may disagree with the law is still obligated to follow it.

¶ 27. Walters also argues that Judge Carlson erred when he granted the State's motion for reconsideration and excluded expert testimony on memory and suggestibility, specifically on the proper protocol for interviewing a child witness. We disagree with this contention.

¶ 28. Again, the admissibility of expert testimony is committed to the discretion of the trial court. *Friedrich*, 135 Wis. 2d at 15. At the offer of proof hearing, Walters's proposed expert, Dr. Underwager, testified about his ability to render an opinion about the

type of interviewing the officer used in questioning the alleged victims. Dr. Underwager testified that he would address the quality of the investigative techniques used in this case, indicating that police interviews of the victims failed "to conform to generally accepted guidelines on how to perform investigatory interviews in cases of alleged child abuse."

■■■

¶ 29. The trial court properly exercised its discretion in granting the State's motion to exclude Dr. Underwager's testimony. In doing so, the trial court provided three bases. First, the trial court found that the majority of Dr. Underwager's testimony would cover matters within the knowledge and general experience of the community which would not require expert testimony. In addition, the trial court found that Dr. Underwager's proffered testimony would not have highlighted specific examples of improper techniques used by the police nor explained how these techniques could have affected the children's statements. Finally, the trial court concluded that because the State was planning on using live witnesses and would not rely on the children's statements to police, evidence regarding the interviewing techniques would be, at best, minimally relevant. On this issue, the trial court considered the relevant facts, applied a correct standard of law and arrived at a reasonable result through a rational thought process and we affirm. *See Peters*, 192 Wis. 2d at 685.

## CONCLUSION

¶ 30. While we affirm the trial court's decision to exclude defense expert testimony regarding witness suggestibility and proper interrogation techniques, we

conclude that the trial court applied the wrong legal standard in its decision to preclude defense expert testimony regarding character and profile evidence. This evidence is allowed pursuant to *Richard A.P.* and *Davis* and is both relevant and admissible. We therefore reverse the judgment of conviction and remand this matter to the trial court for a new trial where Walters is allowed to present his *Richard A.P.* evidence.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.