STATE of Wisconsin, Plaintiff-Respondent-
Petitioner,

v.

Steven G. WALTERS, Defendant-Appellant.

Supreme Court

*No. 01–1916–CR. Oral Argument January 13, 2004.—
Decided March 9, 2004.*

2004 WI 18

(Also reported in 675 N.W.2d 778.)

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief by *David A. Danz* and *Danz Law Offices, LLC,* Elkhorn, and oral argument by *David A. Danz.*

¶ 1. ANN WALSH BRADLEY, J.   The petitioner, State of Wisconsin, seeks review of a published decision of the court of appeals that reversed the defendant's conviction on three counts of sexual assault of a child.[1] The State asserts that the court of appeals wrongfully interpreted *State v. Davis,* 2002 WI 75, 254 Wis. 2d 1, 645 N.W.2d 913, as "compelling" the admission of the defendant's proffered *Richard A.P.*[2] evidence, which compared the personality characteristics of the defendant with the personality characteristics of known sex offenders. Additionally, the State claims the court of appeals erred in concluding that the circuit court erroneously exercised its discretion in excluding the evidence.

¶ 2.   We take this opportunity to clarify that the admissibility of *Richard A.P.* evidence is not compelled by *Davis,* but rather is subject to the discretionary determination of the circuit court. Because we conclude that the circuit court here did not erroneously exercise its discretion in excluding the proffered evidence, we reverse the court of appeals.

I

¶ 3.   On December 28, 1998, the defendant, Steven G. Walters, was charged with three counts of first-degree sexual assault of a child, contrary to Wis. Stat. 948.02(1) (1999–2000).[3] Prior to trial and in response to

---

[1] *State v. Walters,* 2003 WI App 24, 260 Wis. 2d 210, 659 N.W.2d 151 (reversing a decision of the circuit court for Walworth County, James L. Carlson, Judge).

[2] *State v. Richard A.P.,* 223 Wis. 2d 777, 795, 589 N.W.2d 674 (Ct. App. 1998).

[3] All statutory references are to the 1999–2000 version of the Wisconsin Statutes unless otherwise noted.

discovery demands, the parties exchanged witness lists. Walters notified the State that he planned to present expert testimony from Dr. Ralph Underwager[4] and Ms. Hollida Wakefield. He intended that these two experts testify as to adult behaviors towards children and eliciting statements and the characteristics of child molesters.

¶ 4. In response, the State filed a motion in limine, asking the circuit court to preclude Walters from calling any expert "to testify that the defendant is less likely to have committed this sexual assault because of some psychological make-up." In addition to challenging the witnesses' expertise and the reliability of their opinions, the State claimed that the testimony would not satisfy the requirements of *State v. Richard A.P.* "which the state believes was wrongfully decided . . . ." The State further argued that such testimony would invade the province of the jury and that its probative value was outweighed by its prejudice to the State.

¶ 5. Circuit Court Judge John R. Race presided over pretrial hearings, spanning a period of three days. At these hearings, Walters made an offer of proof as to the testimony of Ms. Wakefield and Dr. Underwager.

¶ 6. Wakefield testified that she had conducted several psychological tests on Walters and was prepared to testify as to Walters's personality characteristics and those of known sex offenders. The record reveals the following exchange between Walters's counsel and Ms. Wakefield:

---

[4] Dr. Underwager's expert testimony concerned interviewing techniques used to obtain information from the two victims. The court of appeals affirmed the circuit court's decision to exclude his testimony, and Walters does not challenge that decision in this case.

147

Q. So as an offer of proof, you would be prepared to testify as an expert as it related to the defendant's character?

A. His personality characteristics.

Q. And compare that against known sex offenders?

A. Yes, I would also talk about the characteristics of known sexual offenders, and I would assume that the finder of fact would be the one to draw any conclusions from that.

Wakefield explained that she would not give any opinion on the ultimate issues of fact. Rather, she stated that her testimony "gives information for the trier of fact in weighing probabilities."

¶ 7.   Judge Race issued a memorandum decision on December 20, 1999, in which he concluded that Ms. Wakefield's testimony was admissible. Judge Race observed that "[w]hether or not the state likes the *Richard A.P.* case or not, it is still the law which I must follow . . . ." He then denied the State's motion to exclude the evidence.

¶ 8.   Pursuant to the standardized judicial rotation in Walworth County, Circuit Court Judge James L. Carlson assumed the felony court assignment, replacing Judge Race in the case. On May 17, 2000, the State filed a motion asking Judge Carlson to reconsider Judge Race's ruling. In this motion, the State alleged that "Judge Race was mistaken when he stated that he must follow the holding in *Richard A.P.*" and "[o]bviously *Richard A.P.* is a wrong decision and contrary to precedent nation wide."

¶ 9.   Judge Carlson conducted hearings on the State's motion and ordered Walters to present a synopsis of the pretrial offer of proof testimony. He decided to

exclude the *Richard A.P.* evidence, concluding that it had minimal probative value and was substantially outweighed by unfair prejudice, confusion of the issues, and the danger that it might mislead the jury. He explained:

> [T]o suggest that statistical analyses of people in prison with psychological disorders and their personality profiles would make it less likely that this defendant would offend is of minimal probative value.
>
> I'm not saying it doesn't have any probative value. Minimal probative value in comparison to — Well, I'm employing 904.03. Relevant evidence can be excluded if the probative value is substantially outweighed by unfair prejudice, confusion of the issues or the fact that it might be misleading to the jury. I think all of those would apply here.
>
> I think the probative value is slight, from just my own experience as a judge, seeing that all types of people can be involved in sexual assaults, whether they have a psychological profile of a sexual offender or not, and also from the studies which have been submitted in the briefs. I think in that regard, John – I'm not sure if that cite is correct. It says 1 John E.B. Meyer, evidence in child abuse and neglect cases, Section 5.54 ed. 2d. I would say third edition 1997. Just say that it's not reliable. Profile testimony is not reliable.
>
> And I heard – I heard the lengthy testimony that these witnesses gave, and I think it would just – it would be – it would obscure the real issues here of credibility of witnesses and the jury function of weighing that credibility to have substantial evidence about this wandering – I just have to admit they went all over.[5] Your outline summary even takes two, three pages. Would be

[5] At the pretrial hearing, defense counsel challenged Judge Carlson's statement that he had heard the testimony of the

substantially confusing to the jury and it would cause unfair prejudice to the State because again, it would cause them to, in this case and in future cases, to have a battle of experts on a matter that is of slight probative value. And I think that could confuse the jury and mislead the jury.

So I'm rejecting the use of these expert witnesses to get into the issue of profile evidence for the reasons I've stated.

¶ 10.   Walters then filed a motion for an interlocutory appeal, which was denied. Subsequently, a jury found him guilty of three counts of sexual assault of a child.

¶ 11.   On appeal, Walters claimed that Judge Carlson had erred in granting the State's motion for reconsideration and prohibiting him from offering expert testimony regarding profile and personality characteristics. The court of appeals agreed and reversed his conviction.

¶ 12.   In its decision, the court of appeals concluded that the circuit court did not apply the proper legal standard in excluding the proffered *Richard A.P.* evidence. *State v. Walters*, 2003 WI App 24, 260 Wis. 2d 210, ¶ 24, 659 N.W.2d 151. It explained that while the circuit court had conducted a relevancy analysis, "the analysis was colored by the trial court's belief that *Richard A.P.* was seriously limited as authority and that other jurisdictions have held such evidence to be inadmissible." *Id.*, ¶ 16. The court determined that the evidence had probative value and was not outweighed by any possible danger of unfair prejudice. *Id.*, ¶ 24.

---

expert witnesses in this case. Judge Carlson later clarified that he had heard their testimony in a previous, unrelated case. He also stated on the record that he had reviewed the transcripts of the pretrial hearings in the present case.

Accordingly, it observed that *State v. Davis* "compels a different result here than the one arrived at by the trial court." *Id.,* ¶ 17.

## II

¶ 13.   This case addresses a circuit court's evidentiary ruling that excluded expert testimony comparing the personality characteristics of the defendant with the personality characteristics of known sex offenders. We review a circuit court's decision to exclude such evidence under the erroneous exercise of discretion standard. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983).

¶ 14.   An appellate court will uphold an evidentiary ruling if it concludes that the circuit court examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). Any question that arises in reviewing whether the circuit court applied a proper legal standard, however, presents a question of law subject to independent appellate review. *City of Madison v. Wisconsin Dep't of Workforce Dev.,* 2003 WI 76, ¶ 10, 262 Wis. 2d 652, 664 N.W.2d 584.

## III

¶ 15.   The primary thrust of the State's argument is that the court of appeals misapplied this court's decision in *Davis* and wrongfully viewed *Davis* as "compelling" the admission of *Richard A.P.* testimony.

Additionally, the State contends the court of appeals erred when it reversed the discretionary determination of the circuit court to exclude the proffered evidence.

¶ 16.  In order to understand the issues in this case, we must first examine the law governing the admissibility of *Richard A.P.* evidence. The term *"Richard A.P.* evidence" comes from a decision of the court of appeals in which a defendant accused of molesting a child sought to introduce character evidence through the testimony of a psychologist. *State v. Richard A.P.,* 223 Wis. 2d 777, 795, 589 N.W.2d 674 (Ct. App. 1998). The testimony was intended to demonstrate that the defendant did not exhibit character traits consistent with a sexual disorder such as pedophilia. *Id.* The defendant's expert planned to testify that the defendant's "sexual history and responses to specific testing about his sexual behavior did not show evidence of any diagnosable sexual disorder." *Id.* at 791. Additionally, the expert would testify that absent such a diagnosable disorder, it was unlikely that such a person would molest a child. *Id.*

¶ 17.  The court of appeals in *Richard A.P.* concluded that such evidence was both relevant and admissible under Wis. Stat. § 907.02,[6] the general rule governing expert testimony, and Wis. Stat. § 904.04(1)(a),[7] the rule governing character evidence. *Id.* at 795. It

---

[6] Wisconsin Stat. § 907.02 provides:

**907.02 Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise.

[7] Wisconsin Stat. § 904.04(1)(a) provides:

(1) CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not

observed that such testimony would have assisted the jury in determining the likelihood that the defendant committed the charged offenses. *Id.* at 792. Moreover, it cited support for the proposition that such "arguments or evidence about character profile, which seek to explain conduct or the absence of it, must be supported by competent underlying expert testimony." *Id.* at 794 (citing *King v. State,* 75 Wis. 2d 26, 248 N.W.2d 458 (1977), and *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990)).

¶ 18. In *State v. Davis,* this court revisited *Richard A.P.* and addressed whether such evidence is generally admissible at trial. *Davis,* 254 Wis. 2d 1, ¶ 2. There, the defendant's expert intended to testify that the defendant did not exhibit character traits consistent with a sexual disorder such as pedophilia. Furthermore, because the defendant did not possess such character traits, he would have been unlikely to commit a sexual assault on his daughter. *Id.,* ¶ 5. The State argued for a blanket restriction on *Richard A.P.* evidence on grounds that it has low probative value and is substantially outweighed by its inherent dangers. *Id.,* ¶ 14.

¶ 19. The court in *Davis* expressly rejected the State's request for a blanket restriction and declined to overrule *Richard A.P.* Instead, it concluded that the rules on character evidence and expert testimony allow for the admissibility of *Richard A.P.* evidence. *Id.,* ¶ 16.

¶ 20. Specifically, the court determined that traits regarding the defendant's propensity to commit sexual assault are pertinent traits of his character. *Id.,* ¶ 18. It

admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same.

noted that such evidence has probative value in sexual assault cases, "where there is often no neutral witness to the assault and there is seldom any physical evidence implicating the defendant." *Id.* Additionally, the court observed that such evidence might be useful to the jury "helping it to determine a fact in issue, that is, whether the defendant committed the crime, by showing circumstantial evidence of the defendant's innocence." *Id.*

¶ 21. However, the *Davis* court observed that a circuit court is entrusted to act as a gatekeeper with the power to exclude unduly prejudicial evidence. *Id.*, ¶ 21. It explained that, "the circuit court retains discretion in admitting such evidence and must carefully scrutinize such *Richard A.P.* expert testimony in each case for its admissibility." *Id.*

¶ 22. In the present case, the State contends that the court of appeals wrongfully interpreted *Davis* as compelling the admission of the defendant's proffered *Richard A.P.* evidence. In support of its argument, the State directs this court's attention to the following excerpt of the court of appeals' opinion: "Thus while we agree with the State that *Davis* applies to the case at hand, we conclude that *Davis* compels a different result here than the one arrived at by the trial court." *Walters,* 260 Wis. 2d 210, ¶ 17.

¶ 23. However, in focusing on the excerpted portion of the opinion, the State fails to give any import to the several passages that consistently emphasize that although *Richard A.P.* evidence may be admissible, such admissibility is subject to the sound discretion of the circuit court. ("The discretion to admit or exclude *Richard A.P.* evidence remains with the trial court." *Id.*, ¶ 14. "[T]he rules on character evidence and expert testimony allow for the admissibility of *Richard A.P.*

154

evidence . . . ." *Id.,* ¶ 18. "Again, the admissibility of expert testimony is committed to the discretion of the trial court." *Id.,* ¶ 28.)

¶ 24.  Thus, we read the court of appeals' opinion here differently than does the State. To the extent that the opinion can be read to interpret *Davis* as compelling the admission of proffered *Richard A.P.* evidence, however, we take this opportunity to clarify and reemphasize that the decision to admit or exclude *Richard A.P.* evidence remains a discretionary determination.

¶ 25.  *Richard A.P.* evidence, like other expert evidence, is subject to the requirements of the rules governing the admissibility of evidence. These include not only the rules governing character evidence and expert testimony, but also Wis. Stat. § 904.03,[8] the rule governing the exclusion of otherwise relevant evidence.

¶ 26.  The *Davis* court aptly set forth the framework of analysis in evaluating the admissibility of *Richard A.P.* evidence. It instructs:

> The rules on character evidence and expert testimony allow for the admissibility of *Richard A.P.* evidence. Under our rules of evidence, a defendant may introduce "pertinent trait[s]" of his or her character as evidence. Wis. Stat. § 904.04(1)(a). "Pertinent" refers to the relevance of the traits. 7 Daniel Blinka, *Wisconsin Practice: Wisconsin Evidence* § 404.4, at 133 (2d ed. 2001).

---

[8] Wisconsin Stat. § 904.03 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Thus, like all admissible evidence, character evidence must be relevant to the facts at issue. Relevancy has two facets: (1) the evidence must relate to a fact or proposition that is of consequence to the determination of the action and (2) the evidence must have probative value, that is, a tendency to establish those consequential propositions. *Id.* at § 401.1 at 82.

*Davis*, 254 Wis. 2d 1, ¶ 16.

¶ 27. In addressing the expert testimony necessary for *Richard A.P.* evidence, the *Davis* court advised:

Expert testimony is permitted when specialized knowledge will assist the trier of fact. *See* Wis. Stat. § 907.02. Again, relevancy of the testimony is an essential requirement for the admissibility of such expert testimony. Blinka, *supra,* § 702.2, at 473. In addition, admissibility of the expert testimony depends on the qualifications of the expert and the usefulness of the testimony to the trier of fact. *Id.* The testimony is useful if it will assist the trier of fact to understand evidence or to determine a fact in issue. *Id.;* Wis. Stat. § 907.02.

*Id.,* ¶ 17.

¶ 28. Finally, we note that circuit courts may employ the balancing test of Wis. Stat. § 904.03. Under this rule, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Wis. Stat. § 904.03.

IV

¶ 29. Having established that *Davis* does not compel the admission of *Richard A.P.* evidence, we turn

156

next to the issue of whether the circuit court erroneously exercised its discretion. The court of appeals determined that the circuit court's analysis was "colored" by its belief that *Richard A.P.* was seriously limited as authority and that other jurisdictions have held such evidence to be inadmissible. *Walters,* 260 Wis. 2d 210, ¶ 16. Although we note concerns about the circuit court's analysis, we nevertheless determine that the record supports its exercise of discretion in excluding the evidence.

¶ 30. As discussed above, *Davis* requires that *Richard A.P.* evidence relate to pertinent traits of a defendant's character.[9] It determined that traits relating to the likelihood that a defendant committed a sexual assault are relevant. Here, the circuit court concluded that Walters's proffered evidence was relevant.

¶ 31. However, while the circuit court found the evidence to be relevant, it concluded that it was of "minimal probative value." Probative value is a product of relevance and an assessment of what the evidence is likely to add to the case. 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 403.1, at 114 (2d ed. 2001). In reaching its conclusion that the evidence was minimally probative, the circuit court relied upon its experience as a judge in observing the types of individuals that have been involved in sexual assaults as well as

---

[9] Although the State acknowledges that *State v. Davis,* 2002 WI 75, 254 Wis. 2d 1, 645 N.W.2d 913, applies to this case, it asserts that the defendant's proffered testimony did not reach the level of the testimony at issue in *Richard A.P.* We need not address whether Walters's expert testimony met the technical requirements of *Richard A.P.* because both sides agree in this case that the testimony was relevant.

studies supplied by the parties in their briefs. The circuit court also cited a treatise indicating that profile testimony was unreliable.

¶ 32. After determining that the evidence was minimally probative, the circuit court went a step further than the *Davis* court and applied Wis. Stat. § 904.03. When applying § 904.03, a circuit court is required to compare the probative value of the evidence against other countervailing factors. *Id.* at 113.

¶ 33. The circuit court conducted such a balancing test and considered the potential for the confusion of the issues, and its propensity to mislead the jury. The court stated that the proffered evidence would be inappropriately "lengthy" and "wandering" and would "obscure" the real issue of witness credibility.

¶ 34. Although a Wis. Stat. § 904.03 analysis was the basis of the determination to exclude the evidence, the circuit court nevertheless referenced a treatise indicating that such evidence is unreliable. Such a reference is a cause for concern here because an argument that the evidence was unreliable was offered as grounds to exclude outright similar testimony in *Davis*. There, the court noted that in Wisconsin, "the reliability of expert testimony is an issue for the trier of fact, not the circuit court as a predicate for admissibility." *Davis*, 254 Wis. 2d 1, ¶ 22.

¶ 35. Likewise, the circuit court's conclusion that the "battle of experts" would cause the State unfair prejudice raises concern. Again, this issue was advanced by the State in *Davis*. The *Davis* court found this argument unpersuasive, noting that, "a battle between experts is a frequent occurrence in criminal cases where specialized knowledge on a relevant issue is required." 254 Wis. 2d 1, ¶ 20.

¶ 36. However, on balance, the record supports the circuit court's conclusion that the minimal probative value of Walters's proffered expert testimony was substantially outweighed by the danger that the issues would be confused and the jury would be misled. The circuit court determined first that although relevant, the evidence was minimally probative. Character evidence as proof of conduct may properly be determined to be of low probative value in a given case. *See* Blinka, *Wisconsin Practice: Wisconsin Evidence,* § 404.1, at 124.

¶ 37. Here, due to the victims' late reporting, there was a six-year gap between the first alleged assault and Wakefield's evaluations. During the time frame when the assaults occurred, Walters had a drinking problem. However, when Wakefield evaluated him, he told her that he was no longer drinking and no longer believed that he had a problem with alcohol. At the offer of proof hearing, Wakefield testified that the tests administered assess personality, and that personalities are generally consistent, but can be altered by the consumption of alcohol. She indicated that her test results did not take into account whether the alleged assaultive behavior was triggered by alcohol consumption. This circumstance further minimized the probative value of the expert testimony.

¶ 38. At the motion for reconsideration, the circuit court remarked that the proffered testimony did not reach the level of the offer of proof as characterized by the court in *Richard A.P.* Unlike the offers of proof in both *Richard A.P.* and *Davis,* Wakefield would not have offered any conclusions as to Walters's propensity to commit sexual assault. Rather she testified:

159

What I've done is assess Mr. Walters' personality so that the finder of fact can look at it. And I can talk about what kind of personality child sexual abusers are more likely to have. But clearly you are always going to have some people who aren't child abusers who have the same kind of problems and you are going to find some child abusers who don't have them, but it's a matter of probability. These are characteristics found more often in child sexual abusers, and I can talk about those.

Given the nature of the evidence, the circumstances of the testing, and the scope of the proffered testimony, we determine that the circuit court arrived at a conclusion that a reasonable judge could make when it assessed the evidence to be of low probative value.

■

¶ 39.   The record also supports the circuit court's opinion that the testimony would be sufficiently "lengthy" and "wandering" and could mislead the jury. The defense expert conducted a battery of seven psychological evaluations on the defendant, the results of which would be detailed at trial.[10] An expert would need to explain each of these evaluations to the jury, vouch for their reliability, in addition to explaining the results of the evaluations and the conclusions drawn from them.

¶ 40.   Without this expert testimony, the testimonial portion of Walters's trial lasted one day. In contrast, the offer of proof hearing consumed approximately 165 pages of transcript over three days of hearing. Addition-

---

[10] The seven psychological evaluations performed on the defendant were the Minnesota Multiphasic Personality Inventory – 2, the California Psychological Inventory (CPI), Millon Clinical Multiaxial Inventory – III, Shipley Institute of Living Scale, Adjective Checklist, Biographical Data Sheet, and Hare Psychopathy checklist.

ally, the defense counsel initially informed Judge Carlson that he had anticipated the experts' testimony would add another three days to the trial. In sum, the admission of this evidence potentially would have increased significantly the length of the trial.

¶ 41. In light of the scope and length of the proffered expert testimony in relation to the rest of the testimony, we determine that the circuit court arrived at a conclusion that a reasonable judge could make and that this testimony could have misled the jury and confused the issues in this case. Given the time spent on collateral forays, it was also reasonable for the circuit court to conclude that these dangers substantially outweighed the probative value of the expert testimony here.

¶ 42. Thus, we determine that there is neither a blanket restriction of *Richard A.P.* evidence nor is it compelled. Rather, courts must scrutinize such evidence on a case-by-case basis to assess admissibility. Such evidence has probative value in sexual assault cases where there often is no neutral witness to the assault and seldom any physical evidence implicating the defendant. *Davis,* 254 Wis. 2d 1, ¶ 18. Moreover, it may be of special importance to the jury by helping it to determine whether the defendant committed the crime, by showing circumstantial evidence of the defendant's innocence. *Id.*

¶ 43. We conclude that the circuit court did not erroneously exercise its discretion in excluding the proffered testimony. Although the State questioned the precedential value of *Richard A.P.* at the motion for reconsideration, ultimately the court determined the testimony to be relevant, applied a Wis. Stat. § 904.03 analysis, and reached a conclusion that a reasonable

judge could reach. Accordingly, we uphold the evidentiary ruling of the circuit court.

## V

¶ 44.  In sum, we determine that the admissibility of *Richard A.P.* evidence is not compelled by *Davis,* but rather is subject to the sound discretion of the circuit court. Because we conclude that the circuit court here did not erroneously exercise its discretion in excluding the proffered evidence, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 45.  SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*).  I agree with the court of appeals that the circuit court did not apply the proper legal standard and therefore erred in prohibiting the defendant from presenting his evidence. I also agree with the majority opinion's interpretation of our decision in *State v. Davis,* 2002 WI 75, 254 Wis. 2d 1, 645 N.W.2d 913, that circuit courts are not required to admit *Richard A.P.* evidence but may exercise their discretion in deciding whether to admit such evidence.[1]

¶ 46.  I dissent because I disagree with the majority opinion's conclusion that the circuit court properly exercised its discretion with respect to the proffered evidence in this case.

¶ 47.  The appropriate standard of review in evaluating whether a circuit court properly excluded

---

[1] Majority op., ¶ 2. Although the State latches onto the court of appeals' use of the word "compels," *State v. Walters,* 2003 WI App 24, ¶ 17, 260 Wis. 2d 210, 659 N.W.2d 151, the decision of the court of appeals carefully and frequently recognizes that the admission of evidence is a discretionary decision for the circuit court. *See Walters,* 260 Wis. 2d 210, ¶¶ 14, 19, 21.

162

evidence is whether the circuit court erroneously exercised its discretion. This court has often said that "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination."[2] An appellate court will affirm a circuit court's discretionary decision as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."[3] Therefore, the record on appeal must "reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case."[4] "If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion."[5]

¶ 48. In making the decision to exclude the proffered *Richard A.P.* evidence in this case, the circuit court made the following statements on the record when excluding the evidence:

[2] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

[3] *Long v. Long,* 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995). *See also State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985); *Shuput v. Lauer,* 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982).

[4] *State v. Delgado,* 223 Wis. 2d 270, 281, 588 N.W.2d 1 (1999).

[5] *State v. Hutnik* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968); *see also In re Settlement for Personal Injuries of Konicki* 186 Wis. 2d 140, 150, 519 N.W.2d 723 (Ct. App. 1994) ("[A] trial court erroneously exercises its discretion when its decision is based on a misapplication or erroneous view of the law.").

163

I've heard [the expert] testimony, and in my opinion, it invades the province of the jury. That is the function of the jury to weigh the testimony and the probabilities. And to suggest that statistical analyses of people in prison with psychological disorders and their personality profiles would make it less likely that the defendant would offend is of minimal probative value.

I'm not saying it doesn't have any probative value. Minimal probative value in comparison to—Well, I'm employing 904.03. Relevant evidence can be excluded if the probative value is substantially outweighed by unfair prejudice, confusion of the issues or the fact that it might be misleading to the jury. I think all of those would apply here.

I think the probative value is slight, from just my own experience as a judge, seeing that all types of people can be involved in sexual assaults, whether they have a psychological profile of a sexual offender or not, and also from the studies which have been submitted in the briefs. I think in that regard, John—I'm not sure if that cite is correct. It says 1 John E.B. Meyer, evidence in child abuse and neglect cases, Section 5.54 ed. 2d. I would say third edition 1997. Just says that it's not reliable. Profile testimony is not reliable.

And I heard—I heard the lengthy testimony that these witnesses gave, and I think it would just—it would be—it would obscure the real issues here of credibility of witnesses and the jury function of weighing that credibility to have substantial evidence about this wandering—I just have to admit they went all over. Your outline summary even takes two, three pages. Would be substantially confusing to the jury and it would cause them to, in this case and in future cases, to have a battle of experts on a matter that is of slight probative value. And I think that could confuse the jury and mislead the jury.

164

So I'm rejecting the use of these expert witnesses to get into the issue of profile evidence for the reasons I've stated.[6]

¶ 49.   As I understand the circuit court's ruling on this issue, it provided eight justifications for its decision to exclude the *Richard A.P.* evidence. Those justifications are as follows:

(1)    *Richard A.P.* evidence is relevant but of minimal probative value.

(2)    The judge's own "experience" suggested that all sorts of people can be involved in sexual assaults.

(3)    Profile testimony is not reliable.

(4)    The *Richard A.P.* evidence would obscure the real issue of credibility.

(5)    The circuit court was concerned that the evidence "wander[ed]" and "went all over."

(6)    The *Richard A.P.* evidence would be substantially confusing to the jury.

(7)    The evidence would cause unfair prejudice to the State because of the battle of experts on a matter of slight probative value.

(8)    The evidence might confuse and mislead the jury.

¶ 50.   I address each of circuit court's reasons in turn. Upon examining these reasons, I cannot conclude

---

[6] Transcript of proceedings held before the Honorable James L. Carlson, Circuit Court, Branch 2, on Nov. 8, 2000, at 9–10 (No. 98–CF-390).

that the circuit court properly exercised its discretion in the present case. A number of the circuit court's conclusions, as pointed out by the majority opinion,[7] are based on misstatements of the applicable law. Others appear to invade the province of the jury, to give the jury too little credit with regard to its ability to understand legal questions, or to fail to appreciate the significance of the evidence for the defense.

### (1)

¶ 51. The circuit court concluded in this case that the evidence was relevant but of minimal probative value. *Richard A.P.* testimony is a combination of character evidence and expert testimony that is relevant to an accused's likelihood to commit a sexual assault.[8] This evidence not only is probative but also may be "extremely important," particularly in "he said, she said" cases.[9] We explained the probative value of the evidence as follows:

> [T]his evidence has probative value in sexual assault cases, where there is often no neutral witness to the assault and there is seldom any physical evidence implicating the defendant. Such profile evidence may be *extremely important* to the defense. Such testimony may also be useful to the trier of fact, helping it to determine a fact in issue, that is, whether the defen-

---

[7] Majority op., ¶¶ 34–35.

[8] *State v. Richard A.P.,* 223 Wis. 2d 777, 792–93, 589 N.W.2d 674 (Ct. App. 1998); *State v. Davis,* 2002 WI 75, ¶ 19, 254 Wis. 2d 1, 645 N.W.2d 913.

[9] *Davis,* 254 Wis. 2d 1, ¶ 18.

dant committed the crime, by showing circumstantial evidence of the defendant's innocence.[10]

This is a "he said, they said" case. The evidence is of more than minimal probative value. The circuit court erred in evaluating the probative value of the evidence.

(2)

¶ 52.  Second, the circuit court judge claimed that his personal experience suggested that all sorts of people can be involved in sexual assaults. Although the circuit court does not clearly set forth its reasoning, the circuit court seems to be arguing that because the various individuals the judge had seen in sexual assault cases did not appear to him to be of a similar profile, such profile evidence was not reliable.

¶ 53.  This argument is quite similar to the arguments set forth by numerous courts that have chosen to exclude such evidence. Indeed the circuit court referred to a treatise[11] that in turn referred to a number of non-Wisconsin cases that have ruled that this type of

---

[10] *Davis,* 254 Wis. 2d 1, ¶ 18 (emphasis added). *See also Richard A.P.,* 223 Wis. 2d at 792 (character "testimony may well have assisted the jury in determining whether [the defendant], who maintained that the child had misinterpreted his actions, committed the charged offense"); *State v. Pulizzano,* 155 Wis. 2d 633, 657–58, 456 N.W.2d 325 (1990) (suggesting that evidence of battering syndrome to demonstrate propensity of defendant to engage in acts consistent with that profile requires testimony of an expert); *King v. State,* 75 Wis. 2d 26, 38–39, 248 N.W.2d 458 (1977) (testimony of psychologist admissible to demonstrate defendant's character for nonhostility and nonaggressiveness in first-degree murder case).

[11] John E.B. Myers, *Evidence in Child Abuse and Neglect Cases,* § 554, at 587 (3d ed. 1997).

"[p]rofile testimony is not reliable."[12] The circuit court should have relied on *State v. Richard A.P.,* 223 Wis. 2d 777, 589 N.W.2d 674 (Ct. App. 1998), a published precedential decision, not on a treatise or other state court decisions. *Richard A.P.* did not follow these other state courts, and this court has explicitly rejected their views.[13] The circuit court misinterpreted the applicable law.

¶ 54. The judge's own personal experiences about whether the evidence is reliable invades the province of the jury. The jury also has personal experiences and is capable of making a determination as to the reliability of profile evidence.[14]

### (3)

¶ 55. The third reason is like the second. The reliability of the evidence is a question for the jury, not the judge.

### (4)

· ¶ 56. The fourth reason proffered by the circuit court is that profile evidence will obscure the real issue in the case, namely, the credibility of the accusers and the defendant. On the contrary, this evidence attacks the credibility of the accusers and supports the credibil-

---

[12] *See, e.g., State v. Floray,* 715 A.2d 855 (Del. Super. Ct. 1997); *Wyatt v. State,* 578 So. 2d 811 (Fla. Ct. App. 1991); *Jennette v. State,* 398 S.E.2d 734 (Ga. Ct. App. 1990); *State v. Hulbert,* 481 N.W.2d 329 (Iowa 1992).

[13] *See Davis,* 254 Wis. 2d 1, ¶¶ 14–15.

[14] Whether the heterogeneity of sexual offenders makes profile evidence less reliable is a question for the jury. *Id.,* ¶ 17.

ity of the defendant.[15] "[T]he expert's testimony in [Richard A.P.'s] case was admissible because it would have assisted the jury in determining whether Richard committed the charged offense by providing expert opinion on the likelihood that Richard committed the crime in light of his psychological profile."[16] The credibility of both the accusers and the defendant is a question for the jury.[17]

### (5), (6), and (8)

¶ 57. The fifth, sixth, and eighth reasons are essentially the same: that the proffered evidence would be a waste of time and might confuse the jury. It is true that introducing profile evidence would require additional time and would require thoughtful evaluation by the jury. Nevertheless, the fact that introducing such evidence might require additional time is not a sufficient reason to exclude it.

¶ 58. The test under Wis. Stat. § 904.03 is whether the probative value of the evidence is substantially outweighed by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The circuit court did not evaluate the defendant's need for the *Richard A.P.* evidence against the amount of time required to introduce such evidence.

¶ 59. The circuit court accepted and the majority opinion accepts without question the State's argument that introducing such evidence would add to the length

---

[15] *Richard A.P.,* 223 Wis. 2d at 792.

[16] *Davis,* 254 Wis. 2d 1, ¶ 12.

[17] *Kohlhoff v. State ,* 85 Wis.2d 148, 155, 270 N.W.2d 63 (1978); *State v. Hines,* 173 Wis. 2d 850, 861, 496 N.W.2d 720 (Ct. App. 1993).

of the trial.[18] While it is true that defense counsel initially thought that the introduction of the expert testimony would take some time, he also argued that the trial could be substantially shortened over the time consumed by the offer-of-proof hearing.[19] Also, had the circuit court admitted the proffered evidence but later concluded that it was needlessly cumulative or unduly long, it could have limited the testimony at that point.

¶ 60. Furthermore, these arguments were expressly rejected by this court in *Davis* when the court remarked as follows:

> The State also asserts that such expert testimony wastes the jury's time and may mislead the jury into thinking that reasonable doubt is present because the defendant lacks the character traits of a sexual offender. However, the fact that the defendant may not possess the relevant character traits of a sexual offender will not necessarily lead to an impermissible inference of reasonable doubt.[20]

Other actions by the circuit court, such as giving limiting instructions or excluding evidence when appropriate, will prevent juries from reaching impermissible inferences in specific cases.

---

[18] Majority op., ¶ 40:

Without this expert testimony, the testimonial portion of Walters's trial lasted one day. In contrast, the offer of proof hearing consumed approximately 165 pages of transcript over three days of hearing. Additionally, the defense counsel initially informed Judge Carlson that he had anticipated the experts' testimony would add another three days to the trial. In sum, the admission of this evidence potentially would have increased significantly the length of trial.

[19] Defendant-Appellant's Brief at 21.

[20] *Davis,* 254 Wis. 2d 1, ¶ 21.

170

¶ 61. The circuit court did not carefully scrutinize the evidence. The circuit court recited some of the "magic" words but did not demonstrate a thought process sufficient to support the permissible exercise of discretion.

### (7)

¶ 62. Finally, the seventh factor, expressing the circuit court's concern that introduction of such evidence might lead to a "battle of the experts" has been rejected. This problem is present in every case involving expert testimony.[21] The court has not found this reasoning persuasive.[22]

\* \* \* \*

¶ 63. I cannot conclude, as the majority opinion does, that in spite of the circuit court's incorrect understanding of the law and the limited rationale, the circuit court nevertheless properly exercised its discretion.

¶ 64. For the reasons set forth, I dissent.

---

[21] *State v. Mendoza,* 80 Wis. 2d 122, 163, 258 N.W.2d 260 (1977).

[22] "[A] battle between experts is a frequent occurrence in criminal cases where specialized knowledge on a relevant issue is required. In such cases, *Richard A.P.* evidence may be highly relevant." *Davis,* 254 Wis. 2d 1, ¶ 20.